NATIONAL ENGINEERING & CONTRACTING CO., INC., Appellant–Defendant,

v.

C & P ENGINEERING & MANUFACTURING CO., INC., Appellee–Plaintiff.

No. 49A05–9607–CV–303.

Court of Appeals of Indiana.

Feb. 12, 1997.

Robert A. Anderson, Ice Miller Donadio & Ryan, Indianapolis, for Appellant-Defendant.

Steven K. Huffer, Mitchell Hurst Jacobs & Dick, Indianapolis, for Appellee-Plaintiff.

### OPINION

BARTEAU, Judge.

National Engineering & Contracting Co., Inc. (National) brings this interlocutory appeal challenging the trial court's order compelling production of seventy-one photographs of a building occupied by C & P Engineering and Manufacturing Co., Inc. (C & P). The parties present several issues for our review, which we consolidate and restate as: Did the trial court commit an abuse of discretion when it determined that the photographs were not protected by the attorney work product doctrine? [1]

### FACTS

Sometime before March, 1995, the State of Indiana Department of Transportation contracted with National to widen and improve State Highway 44. C & P, a machine shop business, leased and occupied a building located along the stretch of Highway 44 passing through Connersville, Indiana. On March 1, 1995, National began trenching di-

---

1. We heard oral argument on January 28, 1997 in Indianapolis.

rectly in front of the C & P building. Two days later, on March 3, National employees noticed new cracks in the walls and foundation of the C & P building. The same day, National field personnel took fourteen photographs of the building and the trench with a camera that had been provided by National. The photographs were taken upon the "standing advice," R. 38, of National's general counsel.

National field personnel notified National's Corporate Director of Safety and Loss Control, William Bunner, of the damage on March 7. The next day, representatives from National and C & P attended a meeting inside the building. The building owners' attorney, Joe Heeb, also attended the meeting and discussed his theory of liability against National. Upon general counsel's advice, Bunner took twenty-six photographs of the inside of the building the day of the meeting. Two days later, on March 10, Bunner took twenty photographs of the outside of the building. After the building had been repaired, National's Construction Superintendent took eleven photographs of concrete and steel supports that had been installed to strengthen the building.

C & P filed suit against National on January 5, 1996.[2] During discovery, C & P made the following two requests:

> ***REQUEST 4.*** All photographs, diagrams, plans or drawings of the building which is the subject of this action.

> . . . .

> ***REQUEST 7:*** All photographs of the results and/or appearance of the Collapse described in the Complaint filed in this action and/or of the trench in front of the Premises described therein before it was finally backfilled.

R. 21. To each request, National responded:

> OBJECTION. National objects to [Request No. 4 and Request No. 7] because

[they seek] documents which are protected by the work product privilege and Indiana case law and [they exceed] the scope of Indiana Trial Rule 26. National took approximately 59 photographs of the building because of the prospect of litigation. . . . [3]

R. 21. Upon National's refusal to comply with the discovery requests, C & P filed a motion to compel production. National subsequently filed a motion in opposition to production, supporting its motion with the affidavit of Bunner. After conducting a hearing on the matter, the trial court ordered National to produce copies of the photographs. National challenges the trial court's order.

### STANDARD OF REVIEW

■■■ The discovery rules are designed to allow a liberal discovery process, the purposes of which are to provide parties with information essential to litigation of the issues, to eliminate surprise, and to promote settlement. *Rivers v. Methodist Hosps., Inc.,* 654 N.E.2d 811, 813 (Ind.Ct.App.1995). Due to the fact-sensitive nature of discovery matters, the ruling of the trial court is cloaked in a strong presumption of correctness on appeal. *Mutual Sec. Life Ins. Co. by Bennett v. Fidelity and Deposit Co.,* 659 N.E.2d 1096, 1103 (Ind.Ct.App.1995), *trans. denied* (1996). Our standard of review in discovery matters is limited to determining whether the trial court abused its discretion. *Richey v. Chappell,* 594 N.E.2d 443, 447 (Ind. 1992). This court will reverse only where the trial court has reached an erroneous conclusion which is clearly against the logic and effect of the facts of the case. *Indiana State Bd. of Pub. Welfare v. Tioga Pines Living Ctr., Inc.,* 592 N.E.2d 1274, 1276 (Ind. Ct.App.1992), *trans. denied.* There will be no reversal of a trial court discovery order without a showing of prejudice. *Coster v. Coster,* 452 N.E.2d 397, 400 (Ind.Ct.App. 1983); Ind. Trial Rule 61.

---

2. The record is unclear as to whether the building owners filed suit against National. C & P's complaint against National alleges that C & P was forced to curtail business operations and move to a new location as a result of the damage. Evidently, C & P was unable to use the heavy precision machinery it relied upon in its metal fabricating and engineering business.

3. National subsequently amended its response to include all seventy-one of the photographs.

### ATTORNEY WORK PRODUCT PRIVILEGE

National argues that the photographs contain the mental impressions of National and are therefore entitled to absolute immunity under the attorney work product privilege. In the alternative, National contends that the photographs constitute attorney work product gathered in anticipation of litigation and are discoverable only upon a showing by C & P that it has a substantial need for the photographs and is unable without undue hardship to obtain the substantial equivalent of the photographs through other means.

Indiana Trial Rule 26(B)(3) defines the work product privilege. According to the rule, a party may obtain discovery of documents and tangible things otherwise discoverable and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative only upon a showing that the party seeking discovery: 1) has a substantial need for the materials in the preparation of his case; and 2) is unable without undue hardship to obtain the substantial equivalent of the materials by other means. Products of investigation are work product because their subject matter relates to the preparation, strategy, and appraisal of the strengths and weaknesses of an action, or to the activities of the attorneys involved. *Tioga Pines Living Ctr., Inc.,* 592 N.E.2d at 1277. The requirement of a special showing for discovery of trial preparation materials reflects the view that each side's informal evaluation of its case should be protected, that each side should be encouraged to prepare independently, and that one side should not automatically have the benefit of the detailed preparatory work of the other side. Fed. Rule of Civil Procedure 26, Advisory Committee Notes. Although a party may obtain discovery of ordinary work product materials by making a special showing, a party seeking discovery is never entitled to the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of the party concerning the litigation. *Richey,* 594 N.E.2d at 445. Such material, often called opinion work product, is entitled to absolute protection from discovery.

### A. MENTAL IMPRESSIONS

### 1. ARE "CONTEMPORANEOUS" PHOTOGRAPHS WORK PRODUCT?

C & P asserts that photographs and "other exact representative images," Appellee/Plaintiff's Brief at 11, do not convey mental impressions. C & P contends that photographs as a class "are not filtered through anyone's thought process," Appellee/Plaintiff's Brief at 11, and are more like pure physical evidence than work product obtained in anticipation of litigation. C & P, therefore, urges us to adopt a rule stating that photographs "depicting an event or its scene at or immediately adjacent to the relevant time," Appellee/Plaintiff's Brief at 12, are freely discoverable. C & P quotes the following language from *Galambus v. Consolidated Freightways Corp.,* 64 F.R.D. 468, 473 (N.D.Ind.1974), to support its assertion:

> Photographs, diagrams and the like made at or about the time of the occurrence giving rights to the suit, should be held discoverable under Rule 26(B)(3) as they were in the great bulk of the cases prior to the 1970 amendments.

The *Galambus* court borrowed this language from Wright and Miller's Federal Practice and Procedure. Neither the *Galambus* opinion nor C & P's appellate brief contain the language which follows the above quoted material:

> Some of the earlier cases went on the theory that material of this kind was not within the work product rule at all, since it does not require the skill of an attorney. Other cases said that these materials were work product but that the difficulty of duplicating them was a sufficient showing to overcome the qualified immunity. Under the amendment it can only be on the latter theory that discovery is permitted.

8 Federal Practice and Procedure § 2024.

We reject C & P's assertion that contemporaneous photographs, or photographs "depicting an event or scene at or immediately adjacent to the relevant time," Appellee/Plaintiff's Brief at 12, should, as a rule, be freely discoverable. C & P's asser-

tion ignores the distinction between ordinary and opinion work product. Although photographs may convey the mental impressions of an attorney to only a limited degree, they may nevertheless be produced in anticipation of litigation and therefore entitled to qualified protection from discovery. The determination of whether materials constitute work product necessitates a factual, case-by-case analysis. *Burr v. United Farm Bureau Mut. Ins. Co.,* 560 N.E.2d 1250, 1255 (Ind.Ct. App.1990), *trans. denied* (1991). We decline C & P's invitation to create a blanket rule stating that contemporaneous photographs can never constitute attorney work product.

## 2. DO THE PHOTOGRAPHS CONSTITUTE MENTAL IMPRESSIONS ENTITLED TO ABSOLUTE IMMUNITY?

 National argues that the photographs are opinion work product and absolutely immune from discovery because the photographs embody National's mental impressions concerning which aspects of the damage are most significant to National's case. The trial court did not conduct an *in camera* inspection of the photographs and they are not part of the record. Although photographs taken at an attorney's direction may embody the attorney's beliefs as to what is relevant to his or her case, we cannot accept National's unsupported assertion that the photographs reveal National's theory of the case. Without having the opportunity to examine the photographs at issue in the present case, we cannot conclude that they reveal National's mental impressions and are therefore entitled to absolute immunity from discovery.

## B. IN ANTICIPATION OF LITIGATION

 National contends that, even if the photographs are not entitled to absolute protection, they were taken in anticipation of

litigation and are therefore subject to qualified protection under the work product doctrine. National relies upon the affidavit of Bunner to establish that the photographs were not acquired as part of the company's regular operating procedure, but were taken upon the advice of counsel in anticipation of litigation.[4] National also emphasizes that the majority of the photographs were taken during, or subsequent to, the meeting between the lessor's attorney and representatives from National and C & P, when it became apparent that litigation was imminent.

 A document or tangible thing is gathered in anticipation of litigation if the document or tangible thing can fairly be said to have been prepared or obtained because of the prospect of litigation and not, even though litigation may already be a prospect, because it was generated as part of the company's regular operating procedure. *DeMoss Rexall Drugs v. Dobson,* 540 N.E.2d 655, 658 (Ind.Ct.App.1989). There is no clear-cut rule to determine whether the product of an investigation is discoverable; the determination whether the product is discoverable depends upon the facts of each case. *Burr,* 560 N.E.2d at 1255. The test has been articulated as "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Id.* at 1254; *American Bldgs. Co. v. Kokomo Grain Co., Inc.,* 506 N.E.2d 56, 63 (Ind.Ct.App. 1987), *trans. denied* (each quoting 8 Wright & Miller, Federal Practice & Procedure Sec. 2024 at 198 (1970)).

The Bunner affidavit states that National field personnel do not conduct investigations in the ordinary course of business and that "National has provided personnel with cameras for, among other purposes, assisting

4. We reject C & P's request that we prohibit National from relying upon the Bunner affidavit. C & P maintains the record is without evidence that it had notice of the affidavit, while National maintains it served C & P with both notice and the affidavit before the hearing on the motion to compel production. Both the affidavit and the notice of filing exhibit the same file stamp date

as the date of the hearing. R. 36, 54. Moreover, each party discussed the topics contained in the affidavit. We therefore infer from the evidence in the record that C & P received notice of the affidavit before the hearing and that the trial court properly relied upon the affidavit when it issued its order.

counsel in defending potential claims springing from National's construction business." R. 38. The first fourteen pictures, according to Bunner, were taken by National field personnel "[u]pon standing advice from National's general counsel." R. 38. The affidavit further states that on March 8, 1995, Bunner attended a meeting in the building where the owner's attorney, Joe Heeb, was present. Heeb "identified himself as a lawyer, and spoke regarding his theory of liability against National." R. 39. Bunner, upon the standing advice of counsel, took twenty-six additional photographs of the building during the meeting, and twenty photographs two days later. The affidavit fails to describe the circumstances surrounding the shooting of the last eleven photographs.

### 1. FIRST SET OF PHOTOGRAPHS

■ The affidavit explicitly states that National provided cameras to assist counsel in defending "potential" claims and establishes that at least the first fourteen photographs were taken upon no more than the standing advice of counsel. R. 38. In order for material to constitute work product, the probability of litigating the claim must be substantial and imminent. *CIGNA–INA/Aetna v. Hagerman–Shambaugh,* 473 N.E.2d 1033, 1039 (Ind.Ct.App.1985), *trans. denied.* It appears from the affidavit that the probability of litigation at the time the first fourteen photographs were taken was neither substantial nor imminent. Rather, National advised its employees to photograph damage as a matter of company policy, or in the ordinary course of business. In addition, the affidavit does not establish whether C & P was even aware of the damage on the date the first fourteen pictures were taken. Litigation cannot be imminent when one party does not have knowledge of the facts that would give rise to a cause of action against the other party. We conclude that the first fourteen photographs were taken in the ordi-

nary course of business and do not constitute attorney work product.[5]

### 2. SECOND SET OF PHOTOGRAPHS

■ National fails to provide a specific argument concerning the second set of photographs, but merely argues that "the overwhelming majority of the photographs" were taken subsequent to the March 8 meeting with Heeb, during which it became apparent that litigation was imminent. Brief of Appellant at 8. C & P contends that National failed to show that the twenty-six photographs taken during the meeting were taken before Heeb spoke. Indeed, the affidavit is unclear as to when the second set of pictures were taken, and National has failed to prove that litigation was imminent at the time they were photographed. Because National failed to meet its burden of proof, we conclude that the second set of photographs is freely discoverable.

### 3. THIRD AND FOURTH SETS OF PHOTOGRAPHS

■ The parties agree that the remaining thirty-one photographs were taken after the March 8 meeting, at which time the building owners' counsel discussed his theory of liability against National. C & P fails to present argument as to the third and fourth sets of photographs, but rather seems to concede that litigation became clearly imminent by the close of the March 8 meeting. Indeed, Heeb identified himself as a lawyer and discussed his theory of the case with the other parties during the meeting. It is therefore apparent from the record that, after the meeting, the probability of litigation was substantial and imminent and that the final thirty-one photographs were taken in anticipation of litigation.

### C. C & P'S BURDEN

■ Although the third and fourth sets of photographs were taken in anticipa-

---

5. During oral argument, National cited *Pioneer Lumber, Inc. v. Bartels,* 673 N.E.2d 12 (Ind.Ct. App.1996), to support the proposition that photographs are necessarily gathered in anticipation of litigation. *Pioneer* involved the discovery of surveillance videotapes in a personal injury action and is distinguishable from the present case. In *Pioneer,* the videotapes were secretly taken for the purpose of impeaching the plaintiff at trial. The plaintiff had submitted an insurance claim for her injuries. In the present case, National authorized its employees to photograph damage as a matter of course, and it is unclear whether plaintiffs were even aware of the damage.

tion of litigation, C & P may obtain them upon a showing of substantial need for the photographs in the preparation of its case and a showing that it is unable without undue hardship to obtain the substantial equivalent by other means. T.R. 26(B)(3).[6] C & P's arguments concerning the two prongs of the special showing required by T.R. 26(B)(3) are intertwined. C & P contends that it has a substantial need for the photographs because the uniqueness of photographs in general renders it impossible for C & P to obtain the substantial equivalent of the photographs taken by National. C & P cites *Pioneer* to support its argument that the uniqueness of a photograph renders it impossible for a party to obtain the substantial equivalent of the photograph without undue hardship.

In *Pioneer*, this Court did not hold that the uniqueness of photographs in general operates to prevent a party from obtaining the substantial equivalent of a photograph without undue hardship. Rather, we held that the plaintiff was unable to obtain the substantial equivalent of a videotape depicting her activities because she did not know when the tape was recorded or what activities the tape portrayed. The conduct depicted on the tape in *Pioneer* was both unknown by the plaintiff and incapable of being repeated or memorialized for a second time.

Were we to agree with C & P's assertion regarding the uniqueness of photographs, then all parties seeking photographs could establish a substantial need and all photographs would be discoverable. C & P must show that it has a substantial need for, and is unable to obtain the substantial equivalent of, *National's* photographs. At the time National acquired the third and fourth sets of photographs, C & P knew about the damage and had an opportunity to take photos of premises that it occupied.[7] Furthermore, the fourth set of photographs was taken after the building had been repaired and therefore depicts the building in its current state. C &

P failed to provide evidence that it is unable to obtain the substantial equivalent of the third and fourth sets of photographs without undue hardship. The third and fourth sets of photographs are therefore not subject to discovery.

Judgment affirmed in part, reversed in part and remanded for proceedings consistent with this opinion.

SHARPNACK, C.J., and BAKER, J., concur.

---

6. National contends that the trial court utilized an erroneous legal standard in determining that C & P had met its burden of proof. National bases its argument upon statements made by the court on the record before it rendered the order compelling production. We need not address this argument, inasmuch as our review of the trial court order necessarily involves utilization of the proper standard.

7. C & P, in fact, conceded during oral argument that it photographed the damage at some point after the March 8 meeting.