The **HARTFORD FINANCIAL SER-VICES GROUP, INC., f/k/a ITT Hartford Group, Inc., and its subsidiaries, Hartford Insurance Co., of the Midwest, and its parent companies and subsidiaries, Appellants–Defendants,**

v.

**LAKE COUNTY PARK AND RECREATION BOARD, Appellee–Plaintiff.**

**No. 45A05–9904–CV–172.**

Court of Appeals of Indiana.

Oct. 26, 1999.

David T. Kasper, Julia Blackwell Gelinas, Locke Reynolds LLP, Indianapolis, Indiana, Attorneys for Appellants.

Nick Katich, Lucas, Holcomb & Medrea, Merrillville, Indiana, Attorney for Appellee.

## OPINION

BAKER, Judge

Today, we are asked to resolve an issue of first impression in Indiana. Appellants-defendants Hartford Insurance Company *et al.*, (Hartford) bring this interlocutory appeal as a result of the trial court's issuance of a discovery order which granted appellee-plaintiff Lake County Park and Recreation Board's (Lake County) request that Hartford be compelled to provide Lake County with certain documents that had been generated prior to the filing of a complaint which asserted that Hartford had acted in bad faith in investigating Lake County's insurance claim. Specifically, Hartford maintains that the trial court erroneously ordered the disclosure of "pre-suit" correspondence and memoranda exchanged between it and its legal counsel because such documents were protected by the attorney-client privilege.

## FACTS

Lake County operates a facility known as Deep River Water Park. The park includes water slides, a wading pool, concession stands and a large wave pool. In May, 1995, when the park was under construction, the wave pool sustained substantial damage. Specifically, the concrete floor underneath one of the filters sank either due to defective sub-soil compaction or to over-compaction because of the vibrating pool filters. The parties disagree as to the precise cause of the settling of the concrete which started the chain of events which ultimately led to the costly and substantial repairs.

When the incident occurred, Lake County held an insurance policy with Hartford for protection against losses occurring at the park. Lake County asserted that the policy covered the damage to the floor of the pool as well as to the piping underneath the pool. Depending upon the cause of the damage that was incurred, various

exclusionary clauses of the Hartford policy might be implicated.[1]

Shortly after Lake County reported the loss on May 22, 1995, Hartford began an investigation of the claim. On August 15, 1995, Hartford determined that, although the damage to the concrete floor of the pool filter building was not covered pursuant to the settling or earth movement exclusions of the policy, the ensuing water damage to the floor of the pool was a covered loss.

Notwithstanding this initial determination by Hartford, Lake County filed a complaint against the company on July 22, 1997, claiming, *inter alia*, that Hartford breached the insurance contract and acted in bad faith when handling Lake County's claim for the water park damage. Lake County asserted that while Hartford made the initial determination that the loss was covered, it wrongfully retreated from that position when Lake County made a claim of $1.5 million for replacement of the pool. Thus, Lake County maintained that Hartford engaged "in unfair or deceptive acts and practices" in its handling of the claim and its ultimate refusal to pay for the damage. Record at 23.

On March 22, 1999, the trial court entered a discovery order entitling Lake County to "[a]ll of the defendants' claims files relating to the claim which is the subject of this cause of action, including but not limited to, the claims files of the home office, regional office, local claims office, private investigator's file, and independent insurance adjustor's files, including the file jacket," which were generated before the complaint was filed. R. at 253. The documents at issue were generated between May, 1995 and July 22, 1997, and included correspondence between Hartford and its outside counsel as well as internal communications regarding the advice or opinions of counsel with respect to the loss. R. at 263–67. Hartford now appeals from that discovery order, claiming that it was entitled to invoke the attorney-client privilege regarding the pre-suit communications to and from counsel regarding coverage analysis and advice on responding to Lake County's claim.

On April 6, 1999, the trial court certified its discovery order so that Hartford could seek leave of this court to pursue an interlocutory appeal. We accepted jurisdiction on May 13, 1999.

## DISCUSSION AND DECISION

### I. Standard of Review

■ We initially observe that trial courts are vested with broad discretion with respect to discovery disputes. *Beird v. Figg & Muller Engineers, Inc.,* 516 N.E.2d 1114, 1122 (Ind.Ct.App.1987). Decisions regarding discovery matters will be reversed only if there has been an abuse of that discretion. *Witham Memorial Hosp. v. Honan, et al.,* 706 N.E.2d 1087, 1090 (Ind.Ct.App.1999). An abuse of discretion occurs when a trial court reaches a conclusion which is against logic and the natural inferences which can be drawn from the facts and circumstances before the trial court. *Burr v. United Farm Bureau Mut. Ins. Co.,* 560 N.E.2d 1250, 1254 (Ind.Ct. App.1990), *trans. denied.* Moreover, we note that there must be a rational basis for the trial court's decision. *Eyler v. Eyler,* 492 N.E.2d 1071, 1075 (Ind.1986).

### II. Hartford's Claim of Privilege[2]

■ To resolve Hartford's contention that the trial court erred in ordering dis-

---

1. The exclusions include loss from earth movement such as a "subsidence or earth sinking, rising or shifting," loss from water under the ground surface pressing on or flowing through "paved surfaces," loss caused by acts, errors, or omissions in "design, specifications, workmanship, repair, construction,

renovation ... or compaction" and "underground pipes." Record at 66, 69, 79–80.

2. On cross-appeal, Lake County argues that Hartford waived its right to assert the attorney-client privilege because Hartford failed to lodge a timely objection to the request for production of documents. *Appellee's brief* at

covery of the pre-suit communications to and from counsel regarding Lake County's loss, we initially note the following provisions of Ind. Trial Rule 26(B)(1): "Parties may obtain discovery regarding any matter, *not privileged,* which is relevant to the subject-matter involved in the pending action, whether it relates to the claim or the defense of the party seeking discovery or the claim or defense of any other party. . . ." (Emphasis added).

The source of the attorney-client privilege in Indiana is found in IND. CODE § 34–46–3–1 which provides as follows: "Except as otherwise provided by statute, the following persons shall not be required to testify regarding the following communications: (1) Attorneys, as to confidential communications made to them in the course of their professional business, and as to advice given in such cases." The attorney-client privilege protects against judicially compelled disclosure of confidential information regardless of whether the information is to be disclosed by way of testimony or by court-ordered compliance with a discovery request which a party has attempted to resist. The harm to be prevented is not the manner in which the confidence is revealed, but the revelation itself. *Rocca v. Southern Hills Counseling Center, Inc.,* 671 N.E.2d 913, 917 (Ind. Ct.App.1996). Additionally, as the United States Supreme Court observed in *Swidler & Berlin v. United States,* 524 U.S. 399, 118 S.Ct. 2081, 2084, 141 L.Ed.2d 379 (1998), the "attorney client privilege is one of the oldest recognized privileges for confidential communications." The "privilege is intended to encourage 'full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice.'" *Id.*

(quoting *Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981)); *see also Rocca,* 671 N.E.2d at 918. Moreover, the privilege allows both the attorney and the client to give complete and confidential information, so that both may be fully advised regarding the attorney's services to the client. *Witham Memorial Hosp.,* 706 N.E.2d at 1090. Finally, the attorney-client privilege assures the client that such confidences will not be violated. *Id.*

In the instant case, Lake County suggests that Hartford should be denied the protection of the attorney-client privilege in these circumstances because a claim of bad faith has been lodged against it. While we have found no Indiana case directly on point as to whether the privilege should cease to exist when such a claim is advanced, the court in *Aetna Cas. & Surety Co. v. Superior Court,* 153 Cal.App.3d 467, 474, 200 Cal.Rptr. 471, 474 (1984) rejected the notion and made the following observations:

> [C]onsultations regarding a policy of insurance between an insurance company and its attorney prior to the time the insurance company has accepted its obligations under that policy are protected by the attorney-client privilege vis a vis the person insured by the policy. Such a rule makes perfect sense, as an insurance company should be free to seek legal advice in cases where coverage is unclear without fearing that the communications necessary to obtain that advice will later become available to an insured who is dissatisfied with a decision to deny coverage. A contrary rule would have a chilling effect on an insurance company's decision to seek legal advice regarding close coverage questions, and

9. Notwithstanding this claim, we note that Lake County has proceeded to argue the issue on the merits in a brief submitted to the trial court and at subsequent hearings. In light of such conduct, Lake County may not now successfully assert that Hartford waived its right to claim the privilege. Even more compelling, it cannot be said that Hartford voluntari-

ly consented to the disclosure of its attorney-client correspondence when counsel failed to object in a timely fashion to a motion to produce. We acknowledged in *Witham* that "information subject to the attorney-client privilege retains its privileged character until the *client* has consented to its disclosure." *Id.* at 1091 (emphasis supplied).

would disserve the primary purpose of the attorney-client privilege—to facilitate the uninhibited flow of information between a lawyer and client so as to lead to an accurate ascertainment and enforcement of rights.....

The *Aetna* court went on to explain that an insurance company's retention of legal counsel to interpret the policy, investigate the details surrounding the damage, and to determine whether the insurance company is bound for all or some of the damage, is a "classic example of a client seeking legal advice from an attorney." *Id.* at 476, 200 Cal.Rptr. 471.

And so it is here. The role of Hartford's counsel was not one of mere negotiator; nor was the attorney retained to act in the capacity of an agent other than an attorney such as a type of "outside claims adjuster" or to give simple business advice. *See Mission Nat'l Ins. Co. v. Lilly,* 112 F.R.D. 160, 163 (D.Minn.1986) (if the attorney is acting in some other role, as an ordinary businessman for example, the privilege may not be claimed). Simply put, Hartford retained counsel to investigate Lake County's claim, render legal advice and make a coverage determination under the policy.

Notwithstanding, Lake County seeks succor in cases from other jurisdictions which have carved limited exceptions to the attorney-client privilege in instances where a complaint alleges bad faith against an insurer. For instance, such an exception to the attorney-client privilege has arisen in circumstances where the attorney was initially retained by the insurance company to defend the insured, but the insured subsequently files a complaint against the insurance company for bad faith. *See Colbert v. Home Indem. Co.,* 45 Misc.2d 1093, 259 N.Y.S.2d 36, (N.Y.Sup. Ct.1965). Here, Hartford is not seeking to defend Lake County against a third party. Rather, the underlying claim here, which remains unresolved, is whether Lake County is covered under its policy with Hartford for the damage it allegedly sustained. The communication between Hartford and its attorney was not on behalf of Lake County, but was rather on behalf of Hartford. As a result, the exception announced in *Colbert* does not apply here.

Lake County also directs us to *Blockbuster Entertainment Corp. v. McComb Video, Inc.,* 145 F.R.D. 402 (M.D.La.1992), where the plaintiff instituted a bad faith claim against the insurance company. The *Blockbuster* plaintiff was a third party and had proceeded under Louisiana's Direct Action statute[3] which authorized third parties to pursue an insurer directly rather than requiring them to first proceed against the insured. The insurance company sought a protective order regarding the plaintiff's request for the production of certain documents with respect to the processing and coverage of various claims that had been submitted. *Id.* at 403. The insurance company argued that the requests were overbroad, that the information requested was irrelevant and that the documents were protected by the attorney-client and work product privileges. *Id.* In rejecting the insurance company's arguments and concluding that it failed to carry its burden of demonstrating the existence of either an attorney-client or work product privilege with respect to the requested documents, the court observed as follows:

> Unless [the insurer] wishes to stipulate that coverage exists, i.e., that it will not claim that any conditions or exclusions in the policy are applicable to defeat coverage, the plaintiffs are entitled to know the basis for any denial of coverage.... [A]ny denial of coverage entitles the plaintiffs to explore during discovery the basis for denying coverage. If the denial of coverage is based on interpretation of policy language, the plaintiffs are entitled to learn whether that policy interpretation derives from some manual, internal memorandum, re-

3. *See* LSA–R.S. 22:655.

port or other source, and whether the interpretation has been consistently applied.

*Id.* at 404–05.

We first note that Lake County was pursuing a first-party bad faith claim, unlike the plaintiff in *Blockbuster*. Moreover, contrary to the argument that Lake County seemingly presents, the *Blockbuster* court did not conclude that a claims file is fully discoverable in all instances where bad faith claims are filed against an insurer. Rather, it is apparent that the court merely decided under the circumstances before it that the insurance company's blanket claim of privilege was insufficient where the defendant was required to provide specific information regarding each document withheld on the basis of the attorney-client or work product privilege. *Id.* at 404. Even more compelling here, we note that Hartford provided the majority of discovery that Lake County had requested, and also provided a privilege log that explained its grounds for claiming privilege as to the remaining items and submitted those which were not privileged on their face for in camera inspection. The log detailed the date, author, recipients, and the type of document and privilege asserted for each. Thus, unlike the circumstances in *Blockbuster*, it cannot be said that Hartford was asserting a blanket claim of privilege with respect to the requested documents.

Finally, we note that Lake County points to *Silva v. Fire Ins. Exchange*, 112 F.R.D. 699 (D.Mont.1986), where the court seemingly *did* apply a blanket exception to the attorney-client privilege in a first-party claim of bad faith against an insurer. In *Silva*, the plaintiff moved to compel the defendant-insurance company to produce its complete claims file concerning a fire insurance claim. *Id.* The company argued

that it was entitled to withhold the documents on the basis that they were irrelevant to the bad faith claim and/or could not be discovered under the attorney-client privilege. *Id.* In rejecting that argument and concluding that the plaintiff was absolutely entitled to discovery of the claims files, the court reasoned as follows:

> Under ordinary circumstances, a first-party bad faith claim can be proved only by showing the manner in which the claim was processed, and the claims file contains the sole source of much of the needed information. (Citations omitted). The time-worn claims of work product and attorney-client privilege cannot be invoked to the insurance company's benefit where the only issue in the case is whether the company breached its duty of good faith in processing the insured's claim....

*Id.* at 699–700. Unlike the circumstances presented in *Silva*, the bad faith claim is not the only remaining issue to be litigated here. Rather, the underlying issue of whether the claims submitted by Lake County are recoverable, and the extent to which those claims are recoverable, remain unresolved. Such a distinction is of import because where another issue beyond the bad faith issue exists, disclosure of privileged communications would likely prejudice the insurer with respect to the bad faith claim as well as the underlying claim. Moreover, to establish a claim for bad faith, the facts, rather than the legal advice or opinions pertaining to the insurer's decisions, can be developed through depositions and other discovery of non-privileged information. A simple assertion that an insured cannot otherwise prove a case of bad faith does not automatically permit an insured to rummage through the insurers' claims file.[4] Thus, we decline Lake

4. In addition to the rationale set forth above, we note that several courts have refused to apply the rule announced in *Silva*. For instance, in *Ferrara & DiMercurio, Inc. v. St. Paul Mercury Ins. Co.*, 173 F.R.D. 7, 17 (D.Mass.1997), the court observed that there

was no case law from Massachusetts which has "appl[ied] a blanket exception to the attorney client privilege in a first party bad faith insurance action." *Id.* at 11; *see also Dixie Mill Supply Co., Inc. v. Continental Cas. Co.*, 168 F.R.D. 554, 558 (E.D.La.1996), where

County's invitation to limit the application of the attorney-client privilege in these circumstances.

## CONCLUSION

In light of our discussion above, we conclude that the pre-suit communications between Hartford and its legal counsel are subject to no less protection than those communications which were exchanged after the cause of action was filed. Communications between attorney and client and advice given by the attorney must remain confidential to insure the proper functioning of the legal system. It is apparent to us that the documents Lake County sought were prepared by Hartford's outside counsel in response to the company's request for legal advice relating to the investigation and validity of the claim. To permit Lake County access to the documents simply because it asserted a bad faith claim against Hartford would ignore the basic premise of protecting the attorney-client privilege. As a result, we conclude that the trial court abused its discretion in ordering the discovery of documents regarding the privileged communications made to and from Hartford's legal counsel as referenced in its order of March 22, 1999.

The trial court's discovery order is therefore reversed and this cause is remanded to the trial court for further proceedings.

SHARPNACK, C.J., and MATTINGLY, J., concur.

---

that court held that "[t]he mere fact that a claim of bad faith ... or other claim or defense based on a party's state of mind is involved does not waive the attorney-client privilege."