**Gregory W. BROWN, Appellant–Plaintiff,**

**v.**

**J. Michael KATZ, et al., Appellees–Defendants.**

**No. 45A05–0701–CV43.**

Court of Appeals of Indiana.

July 2, 2007.

R. Brian Woodward, Mark A. Goodrich, Casale Woodward & Buls, LLP, Merrillville, IN, Attorneys for Appellant.

David C. Jensen, Karol A. Schwartz, Eichhorn & Eichhorn, Hammond, Stephen E. Scheele, Dana J. Hada, Goodman Katz & Scheele, Highland, IN, Philip E. Kalamaros, Hunt Suedhoff Kalamaros, LLP, St. Joseph, MI, Attorneys for Appellees.

## OPINION

BAKER, Chief Judge.

Appellant-plaintiff Gregory W. Brown (Brown) appeals the trial court's dismissal of his malicious prosecution action against appellees-defendants J. Michael Katz (Katz), Jonathan Alpert (Alpert), the law firm of Goodman, Katz, Scheele & Bauswell (Katz firm), Lilly M. Schaefer (Schaefer), the law firm of Kopko, Genetos & Retson, LLP (Kopko firm), the Estate of Margaret Jewett (the Estate), the Margaret Jewett Living Trust (the Living Trust), James Jewett (Jewett), individually and as the alternate trustee of the Living Trust, and BroTwo, Inc. (BroTwo) (collectively, the appellees). Specifically, Brown argues that the trial court erred by dismissing his action after determining that he had failed to adequately comply with a discovery order. Finding that the trial court had given Brown sufficient opportunity to comply with its discovery orders, we conclude that the trial court did not abuse its discretion by dismissing the action, and we affirm the judgment of the trial court.

## FACTS

### Prior Lawsuits

The instant cause stems from two underlying lawsuits. On May 16, 2000, Nancy Kaftanich (Kaftanich) and Eric Boesch (Boesch) (collectively, the plaintiffs) filed a complaint against Margaret Jewett (Margaret),[1] individually and as the trustee of the Living Trust, and Jewett, individually and as the alternate trustee of the Living Trust. The action was assigned cause

---

1. Margaret died on June 12, 2000.

number 45D01–0005–CP147 (cause 147). Eric Neff (Neff) represented both Kaftanich and Boesch, and Brown—the plaintiff in the action at issue herein—entered an appearance on behalf of Kaftanich on April 10, 2001. The cause 147 complaint alleged that Kaftanich and Boesch had been partners in the restaurant and tavern business, had purchased the Hoosier Buddy Saloon (the Saloon) in Hammond in 1990, had transferred legal title of the Saloon to the Living Trust in 1992, and that Kaftanich had entered into an agreement with Margaret, individually and as trustee of the Living Trust, to purchase the Saloon's legal title and real estate in 1999. After complications arose regarding Kaftanich's purchase, the plaintiffs filed the cause 147 complaint, alleging breach of contract, unlawful conversion, and violations of the Indiana Uniform Partnership Act.[2] The plaintiffs later amended their complaint to include additional defendants, including BroTwo,[3] a corporation that held the Saloon's alcohol permit. On January 21, 2003, the trial court dismissed cause 147, concluding that the plaintiffs had failed to state claims upon which relief could be granted. We upheld the trial court's dismissal of the case in a memorandum decision on appeal. *Kaftanich v. Jewett, et al.*, No. 45A03–0305–CV–154, 804 N.E.2d 872 (Ind.Ct.App. Feb. 9, 2004).

On May 15, 2002, Jewett, the Estate, and BroTwo (collectively, the plaintiffs) filed a separate complaint against Kaftanich, Boesch, and their cause 147 attorneys—Brown and Neff—alleging malicious prosecution. The action was assigned cause number 45D01–0205–PL–100 (cause 100).[4] Katz [5] represented Jewett, Alpert [6] represented BroTwo, and Schaefer [7] represented the Estate. The plaintiffs moved to dismiss Brown as a defendant on January 31, 2003, and the trial court granted the motion on May 2, 2003, dismissing Brown from the cause 100 litigation.

### Current Action

Brown filed a complaint against the appellees on May 2, 2004. In his complaint, Brown alleged that the appellees had maliciously prosecuted cause 100, which improperly subjected Brown to the legal process and resulted in his emotional distress, monetary loss, embarrassment, and professional injury.

The appellees assert that Brown "resisted virtually all meaningful discovery." Appellees' Br. p. 5. On August 20, 2004, the appellees served written discovery requests on Brown. Brown responded on November 10, 2004, and objected to most of the appellees' requests to produce documents, arguing that the documents were "protected by the insured-insurer privilege, attorney-client privilege, and work product." Appellant's App. p. 222. Brown did not include a privilege log with his response.

The appellees deposed Brown on November 14, 2004. Brown was questioned about his representation of Kaftanich in cause 147 because Brown's complaint in the instant action alleged that the appellees had maliciously prosecuted cause 100, which stemmed from the cause 147 litiga-

---

**2.** Indiana Code §§ 23–4–1–1 *et seq.*

**3.** Margaret was the President and sole shareholder of BroTwo.

**4.** Cause 100 was later transferred and reassigned cause number 45C01–0209–PL–215; however, we will refer to the entire action as cause 100.

**5.** Katz is an attorney with the Katz firm.

**6.** Alpert is an attorney with the Katz firm.

**7.** Schaefer is an attorney with the Kopko firm.

tion. Brown refused to answer approximately ninety questions during the deposition, claiming work-product and attorney-client privileges. Brown admitted that he had not asked Kaftanich to waive the attorney-client privilege. *Id.* at 193.

On December 28, 2004, the appellees filed a motion to dismiss, arguing that the action should be dismissed pursuant to Indiana Trial Rule 37(D).[8] The appellees argued that Brown had improperly asserted the work-product and attorney-client privileges in his discovery responses. On February 22, 2005, the appellees amended their motion to dismiss to also include dismissal pursuant to Indiana Trial Rule 41,[9] alleging that "Brown has refused to permit any discovery concerning the crux of his allegations, thereby unfairly prejudicing [the appellees]." Appellees' App. p. 58.

The trial court held a hearing on the appellees' motion to dismiss on February 23, 2005, took the matter under advisement, and ordered the appellees to file a proposed order. On March 15, 2005, the trial court ordered Brown to file a privilege log by March 25, 2005. On April 1, 2005, Brown filed a privilege log, which generically identified the withheld docu-

ments by date and category—e.g., "Attorney notes" or "Correspondence"—but did not identify the author of the document, the recipient, or the privilege asserted. Appellant's App. p. 224–27.

On April 13, 2005, the appellees filed a supplemental motion to dismiss, arguing that Brown's privilege log was inadequate. On June 3, 2005, the appellees filed a motion to appoint a special master pursuant to Indiana Trial Rule 53 to resolve the parties' discovery disputes.[10] The trial court held a hearing on May 31, 2005, regarding the adequacy of Brown's privilege log and the appellees' motion to appoint a special master.[11]

On March 17, 2006, the trial court issued an order denying the appellees' supplemental motion to dismiss:

> [Brown's privilege] log was to have been filed by March 28, 2005, but was not filed by [Brown] until April 1, 2005. [The appellees], noting the log was not timely filed, argue that it does not fulfill the requirements of a privilege log. In addition to the privileges asserted by [Brown] as to the documents requested by the defense, [Brown] claims the discovery sought is not relevant to [the

**8.** Indiana Trial Rule 37(D) provides, in relevant part, that

> If a party ... fails ... to serve answers or objections to interrogatories submitted under Rule 33, after proper service of the interrogatories, or [fails] to serve a written response to a request for inspection submitted under Rule 34, after proper service of the request, the court in which the action is pending on motion may make such orders in regard to the failure as are just.... The failure to act described in this subdivision may not be excused on the ground that the discovery sought is objectionable unless the party failing to act has applied for a protective order as provided by Rule 26(C).

**9.** Indiana Trial Rule 41(E) provides, in relevant part, that

> [w]henever there has been a failure to comply with these rules or when no action has been taken in a civil case for a period of sixty (60) days, the court, on motion of a party or on its own motion shall order a hearing for the purpose of dismissing such case.

**10.** Indiana Trial Rule 53 provides that "reference [of a matter] to a master shall be the exception and not the rule. In actions that will be tried before a jury, a reference to a master shall be made only when the issues are complicated." In actions tried without a jury, "reference [to a master] shall be made only upon a showing that some exceptional condition requires it."

**11.** The trial court never ruled on this motion.

appellees'] defense and, therefore, discovery cannot be compelled. *Without ruling on the admissibility of such evidence at trial, the Court concludes that the information sought is discoverable.*

\* \* \*

In this instance, [Brown] seeks to invoke privilege for various documents requested by the defense. As seen in *Hartford [Fin. Servs. Group v. Lake County Park & Recreation Bd.,* 717 N.E.2d 1232 (Ind.Ct.App.1999) ], and as previously ordered by this Court, [Brown's] blanket claim of privilege will not be sustained. To resolve issues surrounding the blanket privilege claims by [Brown], the Court ordered [Brown] to prepare a privilege log so that a determination of the validity of any asserted privilege could be made on a document basis, if necessary. *Unlike the privilege log in Hartford, [Brown] has not provided author, recipients, type of document or the specific privilege asserted for each document. In short, [Brown's] assertion of privilege has not been made clearer by the tendered privilege log and is wholly inadequate.*

The defense seeks dismissal of [Brown's] Complaint as a sanction for noncompliance with this Court's order to prepare and file an appropriately prepared privilege log. Choice of sanction under Trial Rule 37 is "... within the discretion of the trial court." ... This Court may impose any sanction which is just, considering whether the party in question was given additional time to respond and was expressly warned that failure to comply may result in dismissal.

This Court, as it should, abhors determining any case other than on the merits. In addition, should such an extreme sanction as dismissal be imposed, it is the Court's view that adequate notice of it must be provided to the litigant against whom it may be imposed. *[Brown] now has this notice. He is to file with the Court a properly prepared privilege log within thirty (30) days of the date of this Order. Should he fail to do so, the Court will dismiss this case with prejudice.*

Appellant's App. p. 239–40 (emphases added) (some internal citations omitted).

Brown filed an amended privilege log on April 13, 2006. For each privileged document, the amended log details the document type, the date of creation, the author, the recipient, and the privilege asserted. *Id.* at 282–92. On May 1, 2006, the parties appeared for a status conference and the trial court ordered the parties to submit briefs addressing, in part, the adequacy of Brown's amended privilege log. Both parties submitted briefs responding to the trial court's order.

On December 18, 2006, the trial court held a hearing regarding Brown's amended privilege log. The appellees argued that fairness required that they be able to examine the protected communications and that Brown should not be able to use the privileges as both "a shield and a sword." Hrg. Tr. p. 8. When asked by the trial court whether Brown's former client—Kaftanich—was willing to waive the attorney-client privilege, Brown's counsel responded, "To be honest, I don't know the answer to that, Your Honor.... I have not [asked her]." *Id.* at 15. Brown argued that his amended privilege log complied with the only Indiana case addressing a similar issue, *Hartford Financial Services v. Lake County Park and Recreation Board,* 717 N.E.2d 1232 (Ind.Ct.App.1999).

After hearing the parties' arguments, the trial court dismissed the matter with prejudice:

This case has been on file now for two and a half years. Largely because of the assertion of both the work[-]product and the attorney-client privilege, which [Brown] claims bars [the appellees] from what the Court has already ruled is legitimate inquiry.

While I cannot say that the asserted privilege is improvident, what I can say is that in the face of the privilege, [the appellees'] efforts to get this case in a position for disposition are so hampered as to make it inequitable to them to have to proceed.

Accordingly, it's my Order today that this case be dismissed with prejudice, and I believe that would conclude the matter.

*Id.* at 24. The trial court entered an order dismissing the matter with prejudice on December 26, 2006. Brown now appeals.

## DISCUSSION AND DECISION

While Brown divides his argument into three sections, the crux of each argument is the same: Brown contends that the trial court erred as a matter of law by dismissing his malicious prosecution action and that, at the very least, the trial court should have conducted an in camera review of the documents or given Brown another opportunity to comply with its discovery orders.

### I. Standard of Review

■ The rules of discovery are designed to "allow a liberal discovery process, the purposes of which are to provide parties with information essential to litigation of the issues, to eliminate surprise, and to promote settlement." *Hatfield v. Edward J. DeBartolo Corp.*, 676 N.E.2d 395, 399 (Ind.Ct.App.1997). The trial court has broad discretion in ruling on issues of discovery, and will reverse only when the trial court has abused its discretion. *Id.* An abuse of discretion occurs

when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or when the trial court has misinterpreted the law. *Trs. of Purdue Univ. v. Hagerman Constr. Corp.*, 736 N.E.2d 819, 820 (Ind.Ct.App. 2000).

■ Although discovery is intended to require "little, if any, supervision or assistance by the trial court," when the goals of this system break down, Indiana Trial Rule 37 provides the trial court with tools to enforce compliance. *Hatfield*, 676 N.E.2d at 399. Indiana Trial Rule 37(B)(2) permits a trial court to sanction litigants for their failure to comply with discovery orders. The rule provides, in pertinent part:

If a party or an officer, director, or managing agent of a party or an organization ... fails to obey an order to provide or permit discovery, including an order made under subdivision (A) of this rule or Rule 35, the court in which the action is pending may make such orders in regard to the failure as are just, [including a]n order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party.

The decision to impose the sanction of dismissal for a party's failure to comply with a discovery order is a matter within the trial court's discretion. *Pfaffenberger v. Jackson County Reg'l Sewer Dist.*, 785 N.E.2d 1180, 1184 (Ind.Ct.App.2003).

### II. Attorney–Client and Work–Product Privileges

■ The source of the attorney-client privilege is found in Indiana Code section 34–46–3–1, which provides: "Except as otherwise provided by statute, the follow-

ing persons shall not be required to testify regarding the following communications . . . [a]ttorneys, as to confidential communications made to them in the course of their professional business, and as to advice given in such cases." The attorney-client privilege protects against judicially compelled disclosure of confidential information regardless of whether the information is to be disclosed by way of testimony or by court-ordered compliance with a discovery request that a party has attempted to resist. *Hartford,* 717 N.E.2d at 1235. The harm to be prevented is not the manner in which the confidence is revealed, but the revelation itself. *Id.*

■ The burden to prove the applicability of the privilege is on the one who asserts it. *P.T. Buntin, M.D., P.C. v. Becker,* 727 N.E.2d 734, 740 (Ind.Ct.App. 2000). The applicability of the privilege must be established as to each question asked or document sought. *Id.* The essential prerequisites to invocation of the privilege are to establish by a preponderance of the evidence: 1) the existence of an attorney-client relationship and 2) that a confidential communication was involved. *Mayberry v. State,* 670 N.E.2d 1262, 1266 (Ind.1996). Information subject to the attorney-client privilege retains its privileged character until the client has consented to its disclosure. *Id.* at 1267. The privilege belongs to the client and can only be waived by conduct attributable to the client. *Id.* at 1267 n. 5.

■ Indiana Trial Rule 26(B)(3) defines the work-product privilege. It provides that a party may obtain discovery of documents and tangible things otherwise discoverable and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative only upon a showing that the party seeking discovery: 1) has a substantial need for the materials in the prepara-

tion of his case; and 2) is unable without undue hardship to obtain the substantial equivalent of the materials by other means. *Nat'l Eng'g & Contracting Co., Inc. v. C & P Eng'g & Mfg. Co., Inc.,* 676 N.E.2d 372, 376 (Ind.Ct.App.1997). A document is gathered in anticipation of litigation if it can fairly be said that the document was prepared or obtained because of the prospect of litigation. *Id.* at 377. Products of investigation are work product because their subject matter relates to the preparation, strategy, and appraisal of the strengths and weaknesses of an action, or to the activities of the attorneys involved. *Id.* at 376. A claim of work-product privilege must be asserted "on a document-by-document basis." *Howard v. Dravet,* 813 N.E.2d 1217, 1222 (Ind.Ct.App.2004).

■ While "ordinary" work product materials may be discoverable upon a special showing, "a party seeking discovery is never entitled to the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of the party concerning the litigation." *Penn Cent. Corp. v. Buchanan,* 712 N.E.2d 508, 516 (Ind.Ct.App.1999). "Such material, often called opinion work product, is entitled to absolute protection from discovery." *Id.*

### III. Trial Court's Dismissal of Action

■ Brown's malicious prosecution action immediately brings to mind an image of the well-known Russian Matryoshka Dolls—the lawsuit is, essentially, an action, within an action, within an action. Brown's complaint alleges that the appellees maliciously prosecuted cause 100. In cause 100, the appellees alleged that the defendants, including Brown, had maliciously prosecuted cause 147, which was the original litigation. Therefore, by now arguing that the appellees maliciously prosecuted cause 100, Brown places his

investigation in cause 147 at issue. Based on that fact, the appellees requested that Brown produce his "complete file" from cause 147. Appellees' App. p. 178.

We emphasize that to resolve this appeal, we need not actually determine the validity or exact scope of the privileges Brown claims; in fact, that would be a very difficult task based on this record. Instead, we need only determine if the trial court abused its discretion by dismissing Brown's action pursuant to Trial Rule 37.

■ Our Supreme Court has previously held that it disfavors blanket claims of privilege. *Hayworth v. Schilli Leasing, Inc.,* 669 N.E.2d 165, 169 (Ind.1996). Instead, claims of privilege must be made and sustained on a question-by-question or document-by-document basis. *Airgas Mid-America, Inc. v. Long,* 812 N.E.2d 842, 845 (Ind.Ct.App.2004). Absent an articulation of specific reasons why the documents sought are privileged, the information is discoverable; otherwise, the whole discovery process is frustrated and vital information may be "swept under the rug." *Id.*

Brown argues that the trial court should have allowed him to file another amended privilege log before dismissing his case. However, the trial court had given Brown numerous opportunities to comply with discovery. The trial court initially ordered Brown to file a privilege log in March 2005, and he eventually filed a log seven days after the court-ordered deadline had expired. The trial court analyzed the log and ultimately concluded that his privilege assertion "has not been made clearer" and that the log was "wholly inadequate." Appellant's App. p. 224–27, 240. As a result,

the trial court ordered Brown to file a "properly prepared privilege log" within thirty days. *Id.* After holding a hearing on the amended log, the trial court dismissed the action.

While it is clear that a party asserting privilege bears the burden of establishing the validity of its assertion, there is a lack of information concerning what constitutes an adequate privilege log in Indiana.[12] Brown argues that because the trial court's order mandating him to file an amended privilege log cited the log used by a party in *Hartford,* Brown's amended log was sufficient because it provided the author, recipients, type of document, and specific privilege asserted for each document, as had the party's log in *Hartford,* 717 N.E.2d at 1237. Therefore, Brown argues that the trial court erred by dismissing his action and that it should have given him another opportunity to comply.

We first note that our ruling in *Hartford* was case-specific and did not establish a standard for all cases. The *Hartford* court was not addressing the validity of the party's privilege log and, instead, was analyzing the application of the attorney-client privilege to pre-suit communications between an insurer and its legal counsel. In holding that those communications were privileged, the court noted that the insured could not claim that the insurer had asserted a blanket claim of privilege because

[the insurer] provided the majority of discovery that [the insured] had requested, and also provided a privilege log that explained its grounds for claiming privilege as to the remaining items and submitted those which were not privileged on their face for in camera inspection. The log detailed the date, author, recipi-

**12.** Neither the Indiana Trial Rules nor Indiana statutory law addresses the contents of an adequate privilege log. As detailed be-

low, *Hartford* is the only Indiana case that discusses a party's privilege log. 717 N.E.2d at 1232.

ents, and the type of document and privilege asserted for each. *Id.* In sum, *Hartford* did not establish a sufficiency standard for privilege logs. Instead, the *Hartford* court analyzed the totality of the circumstances in that case and concluded that because the insurer had provided the opposing party with the majority of the requested discovery and the privilege log sufficiently established the privileged nature of the remaining items, "it *cannot* be said that [the insurer] was asserting a blanket claim of privilege." *Id.*

Unlike the party asserting the privilege in *Hartford,* Brown was, in essence, asserting a blanket claim of privilege. Aside from documents actually filed with the previous trial courts, Brown completely refused the appellees' requests to disclose documents or answer questions regarding the previous litigation. Even after the trial court ruled that the documents sought were relevant and discoverable, Brown filed an amended privilege log still claiming that all of the documents were privileged and listing the general privilege asserted for each. While this structure and layout may have constituted a sufficient privilege log in *Hartford,* it was not an abuse of discretion for the trial court here to determine that Brown's log was insufficient.

Furthermore, while the attorney-client privilege may only be waived by the client, *Mayberry,* 670 N.E.2d at 1267 n. 5, Brown had not even asked Kaftanich—his client in cause 147—whether she would waive the privilege. Brown filed his complaint in this action in May 2004. In his November 2004 deposition, Brown admitted that he had not asked Kaftanich to waive the attorney-client privilege. Appellant's App. p. 193. In March 2006, the trial court ordered that the documents that Brown was claiming were privileged, including the cause 147 materials, were relevant to the current action and, therefore, discoverable. *Id.* at 239. However, during what ultimately became the final hearing in this case—*nine months after the trial court's order and more than two and one-half years after Brown initiated the action*—Brown's attorney admitted that Kaftanich still had not been asked to waive the attorney-client privilege. Hrg. Tr. p. 15.

·This is, perhaps, the most unflattering evidence against Brown. His failure to even ask Kaftanich if she would waive the attorney-client privilege demonstrates his failure to ready the case for litigation, which is peculiar considering that, as the plaintiff, one could assume that Brown expected a favorable outcome following adjudication. As the trial court commented before dismissing the action, "[t]his case has been on file now for two and a half years.... [I]n the face of [Brown's blanket claim of privilege, the appellees'] efforts to get this case in a position for disposition are so hampered as to make it inequitable to them to have to proceed." *Id.* at 24.

In essence, Brown's pretrial actions were an attempt to use the attorney-client and work-product privileges as both a shield and a sword. However, it is well-settled that "legislatures create evidentiary privileges to shield selected information from discovery, and those shields may not be wielded as swords at the will of a party." *Madden v. Ind. Dep't of Transp.,* 832 N.E.2d 1122, 1128 (Ind.Ct.App.2005). As the plaintiff in this action, Brown thrust causes 100 and 147 into the spotlight and he may not hamper the appellees' defense by using the asserted privileges as a shield while failing to comply with the trial court's discovery orders.

While Brown argues that the trial court should have conducted an in camera review of the contested documents, appointed a special master, or provided him one more opportunity to comply before dis-

missing his action, we have previously held that

> Trial Rule 37 has been substantially re-written and no longer requires a trial court to impose a lesser sanction before dismissing an action or entering a default judgment, especially where the "disobedient party has demonstrated contumacious disregard for the court's orders." *Rivers [v. Methodist Hosps., Inc.,* 654 N.E.2d 811, 814 (Ind.Ct.App. 1995) ].... The choice of an appropriate sanction for a discovery violation is a matter committed to the sound discretion of the trial court. *McCullough v. Archbold Ladder Co.,* 605 N.E.2d 175, 180 (Ind.1993). The only limitation on the trial court in determining an appropriate sanction is that the sanction must be just. T.R. 37(B)(2).

*Bankmark of Fla., Inc. v. Star Fin. Card Servs., Inc.,* 679 N.E.2d 973, 978 (Ind.Ct. App.1997).

As previously noted, the trial court's March 2006 order alerted Brown that the evidence sought was discoverable and that he "now has notice" that dismissal with prejudice was a possible sanction for future noncompliance. Appellant's App. p. 240. In light of Brown's indolence, we agree with the trial court that the appellees had been sufficiently burdened and should not have been required to proceed. Therefore, we conclude that the trial court's dismissal was just and the sanction not an abuse of discretion.

The judgment of the trial court is affirmed.

FRIEDLANDER, J., and CRONE, J., concur.