

FILED

Dec 21 2017, 7:54 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

David A. Guerrettaz
John M. Luttrull
Ziemer Stayman Weitzel & Shoulders,
LLP
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Joseph H. Langerak IV
Spencer W. Tanner
Evansville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Diyee Boulangger,

*Appellant-Defendant,*

v.

Ohio Valley Eye Institute, P.C.,

*Appellee-Plaintiff.*

December 21, 2017

Court of Appeals Case No.
82A01-1705-CT-992

Appeal from the Vanderburgh
Superior Court

The Honorable Robert J. Tornatta,
Judge

Trial Court Cause No.
82D06-1503-CT-1047

**Pyle, Judge.**

## Statement of the Case

In this interlocutory appeal, Appellant/Defendant, Diyee Boulangger ("Boulangger"), appeals the trial court's denial of her motion to quash Appellee/Plaintiff, Ohio Valley Eye Institute, P.C.'s ("OVEI"), non-party request for production of documents and *subpoena duces tecum* of her attorney-fee

payments in a civil conversion, theft, theft by false impression, fraud, and forgery action. She argues that the documentation of her attorney fee payments might incriminate her and is, therefore, protected by the attorney-client privilege and her Fifth Amendment privilege against self-incrimination. Because we find that Boulangger's fee payments are not protected communications under either the attorney-client privilege or the Fifth Amendment, we conclude that the trial court did not abuse its discretion in denying her motion to quash the request for production of documents and *subpoena duces tecum*. We affirm the trial court's decision.

We affirm.

## Issue

Whether the trial court abused its discretion when it denied Boulangger's motion to quash OVEI's non-party request for production of documents and *subpoena duces tecum*.

## Facts

On March 2, 2015, OVEI filed a complaint against Boulangger, its former employee. In its complaint, OVEI raised civil claims of conversion, theft, theft by false impression, fraud, and forgery, alleging that Boulangger had over-reported her hours and hourly rate during her three years of employment. The State also charged Boulangger criminally, but it dismissed the charges without prejudice on February 24, 2016. In answer to OVEI's complaint, Boulangger entered a general denial to OVEI's claims, stating that she was "under threat of

prosecution for the alleged actions," and invoked her Fifth Amendment privilege against self-incrimination. (Appellant's App. Vol. 2 at 34).

[4] On June 5, 2015, OVEI filed a motion for summary judgment on its complaint.[1] Boulangger responded to the motion for summary judgment and designated an affidavit from her counsel, David A. Guerrettaz ("Counsel Guerrettaz"), as evidence. In the affidavit, Counsel Guerrettaz averred that in August of 2016, he had become aware that the Evansville Police Department ("Police Department") had continued to investigate Boulangger criminally after the State had dismissed its criminal charges. Specifically, he had learned that the Police Department had obtained a search warrant for Boulangger's email and chatroom conversations through Boulangger's email service provider. In light of this continuing investigation and the potential for the State to bring new charges against Boulangger, Counsel Guerrettaz argued that "[Boulangger could not] present by affidavit facts essential to justify her position" in her response to the summary judgment motion without violating her Fifth Amendment right against self-incrimination. (Appellant's App. Vol. 2 at 43).

[5] Subsequently, the trial court entered summary judgment in favor of OVEI and awarded OVEI a judgment of $518,817.80 plus costs and post-judgment interest against Boulangger. On January 19, 2017, OVEI filed a verified motion for proceedings supplemental to execution claiming that Boulangger had

---

[1] Neither this motion for summary judgment nor Boulangger's response is a part of the record on appeal.

undisclosed assets, income, and profits or other non-exempt property that could be applied to satisfy OVEI's judgment. It requested that the trial court order Boulangger to appear in court to testify to any non-exempt property that could be applied to satisfy the judgment. OVEI also served Counsel Guerrettaz's law firm, Ziemer, Stayman, Weitzel & Shoulders, LLP ("ZSWS"), with a non-party request for production of documents ("Request for Production of Documents") and a *subpoena duces tecum* ("Subpoena"). In its Request for Production of Documents and Subpoena, OVEI requested that Counsel Guerrettaz and ZSWS produce "[c]opies of any and all check and/or wire transfers received from [Boulangger] or from others on behalf of [Boulangger] for legal fees paid for her representation." (Appellant's App. Vol. 2 at 48, 50). Boulangger filed a motion to quash the Request for Production of Documents and Subpoena.[2] In her motion to quash, Boulangger argued that the documentation OVEI had requested was protected by the attorney-client privilege and by Boulangger's Fifth Amendment right against self-incrimination. OVEI filed an objection to the motion to quash, arguing that the information regarding Boulangger's attorney fee payments was not protected by attorney-client privilege and did not implicate Boulangger's Fifth Amendment Privilege.

[6]     After an attorney conference on the pending motions, the trial court ordered Counsel Guerrettaz/ZSWS to produce copies of any checks and/or wire transfers received from Boulangger to pay for her legal fees. Boulangger timely

---

[2] Boulangger filed two motions to quash. The first is not a part of the record.

moved the trial court to certify its order for interlocutory appeal, and the trial court certified the order. This courted granted permission for Boulangger to bring the interlocutory appeal, and Boulangger now appeals.

## Decision

[7] On appeal, Boulangger argues that the trial court abused its discretion when it denied her motion to quash OVEI's Request for Production of Documents and Subpoena. As before the trial court, she argues that the documentation of her legal fee payments was protected by the attorney-client privilege and/or her Fifth Amendment right against self-incrimination.

[8] We will review a trial court's decision to grant or deny a motion to quash a subpoena for an abuse of discretion. *Hueck v. State*, 590 N.E.2d 581, 584 (Ind. Ct. App. 1992), *reh'g denied*, *trans. denied.* Likewise, we also review a request for the production of documents for an abuse of discretion, as the determination of whether to grant or deny a discovery request rests within the sound discretion of the trial court. *Robertson v. Bd. of Zoning Appeals, Town of Chesterton*, 699 N.E.2d 310, 317 (Ind. Ct. App. 1998). We will not find an abuse of discretion unless the trial court's decision was clearly against the logic and effect of the facts and circumstances before the court. *Id.* Furthermore, because of the fact-sensitive nature of discovery issues, the trial court's decisions are clothed with a presumption of correctness on appeal. *Id.*

[9] First, Boulangger asserts that the trial court abused its discretion by ordering OVEI to produce the evidence of her attorney fee payments because those

documents are protected by the attorney-client privilege. The attorney-client privilege is "a very important provision in our law for the protection of persons in need of professional legal help." *Colman v. Heidenreich*, 381 N.E.2d 866, 868 (Ind. 1978). It provides that "'when an attorney is consulted on business within the scope of his profession, the communications on the subject between him and his client should be treated as confidential.'" *Hueck*, 590 N.E.2d at 584 (quoting *Colman*, 381 N.E.2d at 869). The privilege applies to all communications to an attorney for the purpose of obtaining professional legal advice or aid regarding the client's rights and liabilities. *Id.* The purpose of the privilege is to "make[] provision for a person to give complete and confidential information to an attorney, so that the attorney may be fully advised in his services to the client." *Colman*, 381 N.E.2d at 868. "At the same time, it assures the client that these confidences will not be violated." *Id.*

[10] As a general rule, information regarding a client's attorney fees is not protected by the attorney-client privilege because the payment of fees is not considered a confidential communication between an attorney and his or her client. *Id.* at 585. However, there are exceptions, such as where revealing the payee's identity or the fee arrangement would be tantamount to the disclosure of a confidential communication. *Id.* When determining whether the attorney-client privilege prevents disclosure of relevant information, we must construe it narrowly as the privilege impedes the quest for truth. *Id.* at 584. The burden of proving the applicability of the privilege is on the one who asserts it. *Colman*, 381 N.E.2d at 869.

[11] Here, Boulangger argues that there should be an "incrimination" exception to our general rule that the attorney-client privilege does not apply to information regarding a client's attorney fees. This exception, according to Boulangger, would apply where "the disclosure of a client's legal fees would result in implicating the client in the very criminal activity for which she sought legal counsel." (Boulangger's Br. 10). She claims that, under this exception, the trial court abused its discretion when it ordered ZSWS to produce documents regarding her attorney fee payments because:

> [d]ivulging the checks and/or wire transfers received by [ZSWS] would necessarily produce substantive information – i.e. bank accounts, location of accounts, and dollar amounts," and the "amount of money expended, the dates of payments, and the methods of payments could potentially provide the 'link in the chain of evidence' which may ultimately be the basis for factual inferences to bring a criminal indictment.

(Boulangger's Br. 12).

[12] In support of her argument that there should be an "incrimination" exception, Boulangger cites to a footnote this Court wrote in *Hueck* ("Footnote 4"), in which we noted that a few federal cases "refer to the exception [to the attorney-client privilege] as applying when disclosure would result in implicating the client in the very criminal activity for which he sought legal advice." *Hueck*, 590 N.E.2d at 585, n.4.

[13] In Footnote 4, this Court was referring to a seeming "split" in federal circuit court interpretation of the attorney-client privilege regarding whether an

incrimination exception to the privilege exists. However, in *Matter of Witnesses Before the Special March 1980 Grand Jury*, 729 F.2d 489 (7th Cir.1984), the Seventh Circuit Court of Appeals examined this seeming split, including the cases cited in Footnote 4, and declined to create an "incrimination" exception. The Seventh Circuit noted that there were certain Fifth and Ninth Circuit cases in which the respective courts did not clearly state whether they were basing their decisions upon the fact that disclosure of attorney-client information might have been incriminating or upon the fact that disclosure might have disclosed confidential information. *Id.* at 492. The Seventh Circuit concluded, despite this ambiguity, that "in each of the cases . . . mentioned, the Fifth and Ninth Circuits were prepared to recognize the privilege only where disclosure of the client's identity or fees would have revealed a confidential disclosure. . . ." *Id.* at 494. The Seventh Circuit also noted that the Ninth Circuit had clearly rejected the incrimination rationale and held that fee information about a known client was not privileged in the more recent case of *In re Osterhoudt*, 722 F.2d 591 (9th Cir. 1983). *Id.* Accordingly, the Seventh Circuit implicitly concluded that the "split" in the circuits was not actually a "split" because none of the circuit courts had expressly found an incrimination exception to the general rule that attorney fee payments are not protected by attorney-client privilege.

[14] Moreover, the Seventh Circuit noted that its circuit had historically and "consistently focused its analysis on whether the information would disclose confidential communications" when deciding whether the attorney-client

privilege applied to fee information. The Seventh Circuit also cited the Supreme Court case *Fisher v. United States*, 425 U.S. 391 (1976), in which the Supreme Court focused on the issue of whether information sought amounted to a confidential communication for purposes of the attorney-client privilege, rather than the issue of whether disclosure of the information would have incriminated the client. *Id.* at 491-92. In *Fisher*, the Supreme Court reasoned that the purpose of the privilege is "'to encourage clients to make full disclosure to their attorneys,'" so "it protects only those disclosures—necessary to obtain legal advice—which might not have been made absent the privilege.'" *Id.* at 491 (quoting *Fisher*, 425 U.S. at 403).

[15] In light of these precedents, the Seventh Circuit adhered to the interpretation that the attorney-client privilege protects only confidential communications, not any fee information that might incriminate a client. *Id.* at 495. Still, the Seventh Circuit reasoned that billing sheets or time tickets indicating the nature of the documents prepared, issues researched, or matters discussed could reveal the substance of confidential discussions between attorney and client, such as discussion regarding a client's motivation for litigation or possible litigation strategy, and would thus remain privileged under the attorney-client privilege due to their confidential nature. *Id.*

[16] Subsequently, in *Hueck*, this Court addressed the issue of whether information of a third party's fee payment to an attorney was protected by the attorney-client privilege. *Hueck*, 590 N.E.2d at 584. While not directly on point to the instant case factually, we concluded that, because the information sought by the

subpoenas in *Hueck* "was merely the source and the amount of fees paid," that "limited request [for] information [did] not constitute a confidential communication" protected by the attorney-client privilege. *Id.* at 586.

[17] Here, the Request for Production of Documents and Subpoena, as in *Hueck*, requested only the information regarding the source of and the amount of fees Boulangger paid. In light of our conclusion in *Hueck* and the Seventh Circuit and Supreme Court precedent discussed in *Matter of Witnesses Before the Special March 1980 Grand Jury*, we conclude that the fee information OVEI requested was not confidential nor protected by the attorney-client privilege. We decline to create an "incrimination" exception and instead conclude, like the precedent above, that only confidential communications are protected by the attorney-client privilege.

[18] Alternatively, Boulangger argues that information regarding her payment of fees was protected by her Fifth Amendment right against self-incrimination. We are not persuaded by this argument. The Fifth Amendment to the United States Constitution provides that: "No person . . . shall be Compelled in any criminal case to be a Witness against himself." However, in *Fisher*, the Supreme Court noted that, according to previous cases:

> [T]he privilege was never intended to permit (a person) to plead the fact that some third person might be incriminated by his testimony, even though he were the agent of such person . . . . (T)he Amendment is limited to a person who shall be compelled in any criminal case to be a witness against [h]imself. . . . It is

extortion of information from the accused himself that offends
our sense of justice.

*Fisher*, 425 U.S. at 398 (internal citations and quotations omitted). The Court also explained that, "'A party is privileged from producing evidence but not from its production.'" *Id.* at 399 (quoting *Johnson v. United States*, 228 U.S. 457, 458 (1913)). Based on this reasoning, the Supreme Court held that the Fifth Amendment did not preclude compelled disclosure of information from a third party such as a defendant's attorney. *Id.*

[19] Based on this precedent, we conclude that the Fifth Amendment did not protect the fee payment information that OVEI subpoenaed and requested from ZSWS. Accordingly, the trial court did not abuse its discretion in denying Boulangger's motion to quash OVEI's Request for Production of Documents and the Subpoena.

[20] Affirmed.

[21] Riley, J., and Robb, J., concur.