

FILED

Nov 07 2018, 8:47 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT ZURICH
AMERICAN INSURANCE COMPANY

Kevin S. Smith
Church, Church, Hittle & Antrim
Fishers, Indiana

Charles S. Smith
Schultz & Pogue
Indianapolis, Indiana

Brian O'Gallagher
Cremer, Spina, Shaugnessy, Jansen &
Siegert, LLC
Chicago, Illinois

ATTORNEYS FOR INTERESTED PARTY
SCHINDLER ELEVATOR CORPORATION

Kevin C. Schiferl
Maggie L. Smith
Blake N. Shelby
Frost Brown Todd LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES

Michael R. Limrick
Hoover Hull Turner LLP
Indianapolis, Indiana

Gregory A. Neibarger
Bingham Greenebaum Doll LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Zurich American Insurance
Company; Schindler Elevator
Corporation; and KONE, Inc.,[1]

*Appellants-Defendants,*

v.

Circle Centre Mall, LLC; Simon
Property Group, Inc.; and XL
Insurance America, Inc.,

*Appellees-Plaintiffs.*

November 7, 2018

Court of Appeals Case No.
29A05-1710-PL-2223

Appeal from the Hamilton
Superior Court

The Honorable Steven R.
Nation, Judge

Trial Court Cause No.
29D01-1304-PL-2892

**Friedlander, Senior Judge.**

[1] In 2009, Schindler Elevator Corporation had a contract with Circle Centre
Mall, LLC and Simon Property Group, Inc. (collectively, "the Simon
Plaintiffs") to maintain the escalators at the Circle Centre Mall in Indianapolis.
KONE, Inc. had the maintenance contract before 2009. Schindler's general
liability insurer in 2009 was Zurich American Insurance Company. In October
of 2009, high school student Phillip Caler fell from an escalator in the mall and
sustained severe injuries, and, in 2011, Caler's guardians sued the Simon
Plaintiffs, Schindler, and KONE, claiming, *inter alia*, that Schindler had

---

[1] Schindler and Kone are parties on appeal pursuant to Indiana Rule of Appellate Procedure 17(A), which
provides, in part, that "[a] party of record in the trial court or Administrative Agency shall be a party on
appeal."

negligently maintained the escalator from which Caler had fallen and had failed to warn the Simon Plaintiffs of the need for fall protection.[2]

[2] As part of Schindler's maintenance contract with the Simon Plaintiffs, Schindler agreed to name the Simon Plaintiffs as additional insureds pursuant to its policy with Zurich. Moreover, Zurich had a separate, so-called "fronting" agreement with Schindler requiring that any money that might have to be paid to the Simon Plaintiffs pursuant to their insurance contract was to ultimately come from Schindler, not Zurich. In August of 2011 and December of 2012, the Simon Plaintiffs asked Schindler for a defense of the Caler suit by both Schindler and Zurich. Schindler denied the Simon Plaintiffs' requests on the basis that any request for coverage under Schindler's policy should have been made to Zurich.

[3] In March of 2013, the Simon Plaintiffs asked Zurich directly for defense and indemnification in the Caler suit. On April 1, 2013, the Simon Plaintiffs filed a complaint in Hamilton Superior Court against Schindler and KONE, contending that the defendants had breached their contractual duties to them in the Caler suit. On June 21, 2013, Zurich responded to the Simon Plaintiffs' request for a defense in the Caler suit with a reservation-of-rights letter, agreeing to defend the Simon Plaintiffs. Zurich represented that it and Schindler had assigned their third-party claim administrator, Broadspire Services, Inc., to

---

[2] On September 29, 2013, Caler tragically succumbed to his injuries at the age of twenty. REMEMBERING PHILLIP CALER, https://www.texasffa.org/news/Remembering-Phillip-Caler (last visited September 13, 2018).

"assist in the defense or resolution of this matter on behalf of both Schindler and SIMON." Appellants' App. Vol. V, p. 202. On July 25, 2013, after learning that Schindler was planning to settle the Caler suit, the Simon Plaintiffs wrote to ask whether Zurich would indemnify a settlement by the Simon Plaintiffs. When Zurich did not respond, the Simon Plaintiffs agreed, in principle, to settle the Caler suit on July 26, 2013.

[4] On June 17, 2014, the Simon Plaintiffs and XL Insurance filed a second lawsuit in Marion Superior Court against Zurich and KONE's insurer Old Republic Insurance Company. This lawsuit alleged the Simon Plaintiffs were additional insureds under Schindler's and KONE's insurance policies with Zurich and Old Republic, respectively, giving rise to duties on the part of Zurich and Old Republic to defend and indemnify the Simon Plaintiffs in the Caler suit. The Simon Plaintiffs specifically alleged that not only had Zurich and Old Republic breached their contractual duties to them, they had also breached their duties of good faith and fair dealing. The Simon Plaintiffs sought $960,310.14 in defense costs and $2,000,000.00 of the amount they had paid to settle the Caler lawsuit, or Zurich's policy limit. On May 19, 2015, the two lawsuits filed in Hamilton and Marion Counties were consolidated into the Hamilton County case from which this appeal was taken. While the original 2013 complaint had alleged that Schindler and Kone had contractual duties to defend the Simon Plaintiffs, on March 7, 2016, the trial court permitted the Simon Plaintiffs to amend their complaint to allege duties to indemnify as well.

[5] During the litigation, a discovery dispute arose about whether Zurich had to produce documents exchanged between Schindler and Zurich during the Ca1er litigation. On September 22, 2016, the Simon Plaintiffs moved to compel the production of many such documents, which motion Zurich and Schindler opposed, claiming that the documents were protected by the work-product doctrine and/or the attorney-client and/or insurer-insured privileges. Following a hearing on February 2, 2017, the trial court granted the Simon Plaintiffs' motion to compel.

[6] In response to the court's order of February 2, 2017, Zurich produced nearly 300 pages of documents over which Zurich had previously asserted privilege but continued to withhold a total of five documents ("the Group I Documents"). The Group I Documents, which were first sought in the Simon Plaintiffs' September 22, 2016, motion to compel production, are described in Zurich's privilege log as follows:

| Bates Label | Date | From | To | Subject |
|---|---|---|---|---|
| ZURPRI 002-007 | March 11, 2013 | Kevin Schiferl (Schindler outside counsel) | Tom Quinn (Schindler in-house counsel), Yohanny Nguyen (Schindler paralegal), Vanessa Davis (Schindler outside counsel) | The Simon Plaintiffs' request for insurance coverage |

| | | | | |
|---|---|---|---|---|
| ZURPRI 096-097 | April 26, 2013, claim note enclosing March 12, 2013, email | Tom Quinn (Schindler in-house counsel) | Kathleen Fuell (Zurich claims adjuster), Kevin Schiferl (Schindler outside counsel), John Dull (Schindler Risk Manager), John Karnash (Schindler in-house counsel), Thomas Sparno (Schindler in-house counsel), Vanessa Davis (Schindler outside counsel) | The Simon Plaintiffs' request for coverage in Caler suit |
| ZURPRI 218 | April 25, 2014 | Kathleen Fuell (Zurich claims adjuster) | Kevin Schiferl (Schindler outside counsel) | The Simon Plaintiffs' claim for reimbursement of attorneys fees |
| ZURPRI 235-237 | May 2, 2013 | Kevin Schiferl (Schindler outside counsel) | Tom Quinn (Schindler in-house counsel), Vanessa Davis (Schindler outside counsel) | The Simon Plaintiffs' request for coverage in Caler suit |
| ZURPRI 258 | July 23, 2013 | Tom Quinn (Schindler in-house counsel) | Kevin Schiferl (Schindler outside counsel), Vanessa Davis (Schindler outside counsel) | The Simon Plaintiffs' request for coverage in Caler suit |

[7] On May 11, 2017, the Simon Plaintiffs filed a motion for sanctions against Zurich and requested the production of the Group I Documents and four more ("the Group II Documents"; collectively with the Group I Documents, "the

Documents"), contending that Zurich violated the trial court's February 2, 2017, order by not producing the Documents. The Group II Documents are described as follows:

| Bates Label | Date | From | To | Subject |
|---|---|---|---|---|
| ZURPRI 196-202 | February 11, 2013; provided to Zurich March 14, 2013 | Venessa Davis (Schindler outside counsel) | Tom Quinn (Schindler in-house counsel), Judy Fritzman (Broadspire Claims Examiner); copied to Yohanny Nguyen (Schindler paralegal), Kevin Schiferl (Schindler outside counsel) | Quarterly evaluation report regarding Schindler's defense of Caler lawsuit |
| ZURPRI 205 | February 19, 2013; provided to Zurich March 14, 2013 | Tom Quinn (Schindler in-house counsel) | Judy Fritzman (Broadspire Claims Examiner), Kevin Schiferl (Schindler outside counsel) | Fault apportionment analysis of Schindler's defense of Caler lawsuit |
| ZURPRI 195 | March 4, 2013; provided to Zurich March 14, 2013 | Kevin Schiferl (Schindler outside counsel) | Tom Quinn (Schindler in-house counsel); copied to Judy Fritzman (Broadspire Claims Examiner), Yohanny Nguyen (Schindler paralegal), Venessa Davis | Email containing analysis of an expert in the Caler suit |

| | | | (Schindler outside counsel) | |
|---|---|---|---|---|
| ZURPRI 429 | June 24, 2013; provided to Zurich July 23, 2013 | Venessa Davis (Schindler outside counsel) | Kathleen Fuell (Zurich claims adjuster) | Mediation statement |

[8] On August 4, 2017, the trial court granted the Simon Plaintiffs' motion for sanctions, ordering Zurich to produce the Documents within thirty days and pay the Simon Plaintiffs' attorney fees, the amount of which would be determined after the Simon Plaintiffs submitted an affidavit of attorney fees. On September 1, 2017, the Simon Plaintiffs filed their attorney fee evidence. On September 26, 2017, the trial court ordered Zurich to pay the Simon Plaintiffs $14,871 as a sanction. On October 2, 2017, Zurich filed a notice of appeal as a matter of right pursuant to Indiana Appellate Rule 14(A)(1).

[9] Meanwhile, on September 15, 2017, while briefing on the Simon Plaintiffs' attorney fee evidence was ongoing, the Simon Plaintiffs filed a motion for sanctions and entry of default judgment against Zurich, asking that default judgment be entered against Zurich as an additional sanction for Zurich's failure to produce the Documents. Following a hearing on December 1, 2017, the trial court entered default judgment against Zurich on both counts of the Simon Plaintiffs' complaint and stayed further proceedings. On January 17, 2018, the trial court certified its December 1, 2017, order for interlocutory appeal. We accepted jurisdiction over this second interlocutory appeal and

ordered it consolidated with the first interlocutory appeal filed on October 2, 2018.

## I. Whether the Trial Court Abused Its Discretion in Concluding that the Documents Were Discoverable

[10]    "Due to the fact-sensitive nature of discovery matters, the ruling of the trial court is cloaked with a strong presumption of correctness on appeal." *WESCO Distrib., Inc. v. ArcelorMittal Ind. Harbor LLC*, 23 N.E.3d 682, 712 (Ind. Ct. App. 2014), *trans. dismissed*. We review a trial court's decision regarding discovery matters for an abuse of discretion. *Int'l Bus. Machs. Corp. v. ACS Human Servs., LLC*, 999 N.E.2d 880 (Ind. Ct. App. 2013), *trans. denied*. An abuse of discretion occurs "only when the trial court reached a conclusion against the logic and natural inferences to be drawn from the facts and circumstances before the court." *Burr v. United Farm Bureau Mut. Ins. Co.*, 560 N.E.2d 1250, 1254 (Ind. Ct. App. 1990), *trans. denied*. We do not reweigh those facts and circumstances; rather, we consider only the evidence most favorable to the trial court's order. *Estate of Lee ex rel. McGarrah v. Lee & Urbahns Co.*, 876 N.E.2d 361 (Ind. Ct. App. 2007). We will affirm a trial court's ruling "if it is sustainable on any legal basis in the record, even though this was not the reason enunciated by the trial court." *Id.* at 367.

[11]    Evidentiary privileges are construed narrowly because they impede the quest for truth. *Boulangger v. Ohio Valley Eye Inst., P.C.*, 89 N.E.3d 1112 (Ind. Ct. App. 2017). "The burden to prove the applicability of the privilege is on the one who

asserts it, and the privilege must be established as to each document sought." *Howard v. Dravet*, 813 N.E.2d 1217, 1222 (Ind. Ct. App. 2004). Zurich and/or Schindler[3] contend that the Documents were covered by the work-product doctrine and/or the attorney-client and/or insurer-insured privileges and were therefore undiscoverable.

## A. Whether Indiana Follows the "Trial Is the File" Approach to Bad-Faith-Denial-of-Coverage Claims

[12] The Simon Plaintiffs also seem to suggest that we should apply the various evidentiary privileges and doctrines differently in cases where a claim of bad-faith denial of insurance coverage is being made. Zurich and Schindler note that the Simon Plaintiffs brought the trial court's attention to the Delaware case of *Tackett v. State Farm Fire & Casualty*, 558 A.2d 1098 (Del. Super. Ct. 1988), in which the Delaware Superior Court of New Castle County concluded that the importance of information in the claims file in a case where a bad-faith denial of coverage is alleged essentially overrode the attorney-client privilege and the work-product doctrine. *Id.* at 1103-05. The holding is based, in part, on the trial court's conclusions that, in such cases, "the trial is the file" and that a plaintiff cannot realistically hope to prove a bad-faith denial of coverage without being able to discover the claims file. *Id.* at 1103.

---

[3] Schindler argues in its "Brief of Interested Party" that eight of the nine Documents were improperly deemed to be discoverable, an argument specifically adopted and incorporated by Zurich. Zurich also contends that the trial court abused its discretion in concluding that the Document designated ZURPRI 218 was discoverable.

[13] Be that as it may, the rulings of Delaware trial courts are not binding on this court, and, in any event, we have explicitly rejected such a rule. In *Hartford Financial Services Group, Inc. v. Lake County Park & Recreation Board*, 717 N.E.2d 1232 (Ind. Ct. App. 1999), we declined to adopt the position that the contents of a claims file in a bad-faith-denial-of-coverage case could not be protected by evidentiary privileges, stating that "[a] simple assertion that an insured cannot otherwise prove a case of bad faith does not automatically permit an insured to rummage through the insurers' claims file." *Id*. at 1237. The Simon Plaintiffs offer no reason why we should depart from our holding in *Hartford*, and we can think of none. To the extent that the Simon Plaintiffs argue that the various evidentiary privileges and doctrines should be applied differently in this case and others like it, we reject that argument. Any change in the foregoing would have to be made by the Indiana Supreme Court.

## B.  Work-Product Doctrine

[14] Zurich and Schindler contend that the work-product doctrine applies to the Group II Documents, which comprise (1) Schindler's quarterly evaluation report, which includes an evaluation of its defense in the Caler suit (ZURPRI 196-202); (2) the fault apportionment analysis prepared by Schindler (ZURPRI 205); (3) a report evaluating Caler's expert (ZURPRI 205); and (4) Schindler's mediation statement (ZURPRI 429).

[15] The work-product doctrine is defined in the Indiana Rules of Trial Procedure:

> [A] party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (B)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Ind. Trial Rule 26(B)(3).

[16] The Group II Documents were all originally prepared by Schindler's attorneys for Schindler, which is a party in this case, so the next question is whether the Group II Documents were prepared in anticipation of litigation or trial. "A document is gathered in anticipation of litigation if it can fairly be said that the document was prepared or obtained because of the prospect of litigation." *WESCO Distrib.*, 23 N.E.3d at 713 (citing *Nat'l Eng'g & Contracting Co., Inc. v. C&P Eng'g & Mfg. Co.*, 676 N.E.2d 372, 377 (Ind. Ct. App. 1997)). "Products of investigation are work product because their subject matter relates to the preparation, strategy, and appraisal of the strengths and weaknesses of an action, or to the activities of the attorneys involved." *Id.* (citing *Nat'l Eng'g & Contracting*, 676 N.E.2d at 376).

[17] All four of the Group II Documents at issue were prepared by Schindler before it settled the Caler suit and for the express purpose of evaluating the strength of

Caler's case against Schindler, KONE, and/or the Simon Plaintiffs. The Group II Documents addressed, respectively, an evaluation of Schindler's defense, a fault-allocation analysis regarding the four defendants, an evaluation of Caler's expert, and a confidential mediation report evaluating Schindler's litigation position. As described in Zurich's privilege log, the Group II Documents clearly all contain mental impressions, conclusions, opinions, and/or legal theories of a Schindler attorney concerning Schindler's defense of the Caler suit. It is difficult for us to imagine documents that would fit the definition of work product more squarely than these four.

[18]     The only question left before moving on is whether it matters that the Group II Documents were prepared in anticipation of the Caler litigation and not the litigation with the Simon Plaintiffs. Trial Rule 26(B)(3) does not specifically require that the material had to be prepared for litigation between the party seeking discovery and the party resisting it, only that the material in question was prepared "in anticipation of litigation or for trial[.]" Moreover, we have explicitly interpreted Trial Rule 26(B)(3) to apply to work product generated during prior litigation. In *American Buildings Company v. Kokomo Grain Company, Inc.*, 506 N.E.2d 56 (Ind. Ct. App. 1987), *trans. denied*, we noted that

> [t]he primary purpose of the work product privilege is to assure that an attorney is not inhibited in his representation of his client by the fear that his files will be open to scrutiny upon demand of an opposing party. Counsel should be allowed to amass data and commit his opinions and thought processes to writing free of the concern that, at some later date, an opposing party may be entitled to secure any relevant work product documents merely

on request and use them against his client. The work product privilege would be attenuated if it were limited to documents that were prepared in the case for which discovery is sought. What is needed, if we are to remain faithful to the articulated policies of *Hickman*[ *v. Taylor*, 329 U.S. 495 (1947)[4]], is a perpetual protection for work product, one that extends beyond the termination of the litigation for which the documents were prepared. Any less protection would generate the very evils that the Court in *Hickman* attempted to avoid.

*Id.* at 62 (quoting *In re Murphy*, 560 F.2d 326, 334 (8th Cir. 1977)). We concluded that the rationale in *Murphy* was persuasive and so held that "the work-product doctrine applies to items prepared in anticipation of prior litigation." *Id.* The Simon Plaintiffs give us no reason to depart from our approach in *American Buildings*, and we see none. Because we conclude that the Group II Documents are covered by the work-product doctrine, we also conclude that the trial court erred in ordering that Zurich disclose them. That leaves the five Group I Documents that Zurich and/or Schindler claim are covered by the attorney-client and insurer-insured privileges.

## C. Attorney-Client Privilege

[19] Schindler contends that four of the five Group I Documents are covered by the attorney-client privilege, while Zurich contends that all five are. Indiana Code section 34-46-3-1 (1998) provides, in part, as follows: "Except as otherwise provided by statute, [attorneys] shall not be required to testify [...] as to

---

[4] *Hickman* is the case that established the work-product doctrine, concluding that "[n]ot even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney." 329 U.S. at 510.

confidential communications made to them in the course of their professional business, and as to advice given in such cases."

> The applicability of the [attorney-client] privilege must be established as to each question asked or document sought. [*P.T. Buntin, M.D., P.C. v. Becker*, 727 N.E.2d 734, 740 (Ind. Ct. App. 2000)]. The essential prerequisites to invocation of the privilege are to establish by a preponderance of the evidence: 1) the existence of an attorney-client relationship and 2) that a confidential communication was involved. *Mayberry v. State*, 670 N.E.2d 1262, 1266 (Ind. 1996). Information subject to the attorney-client privilege retains its privileged character until the client has consented to its disclosure. *Id.* at 1267. The privilege belongs to the client and can only be waived by conduct attributable to the client. *Id.* at 1267 n.5.

*Brown v. Katz*, 868 N.E.2d 1159, 1166 (Ind. Ct. App. 2007). We can dispose of ZURPRI 218 quickly, as it is a communication from a Zurich claims adjuster to a Schindler attorney. Because ZURPRI 218 does not concern advice given by an attorney to a client, the attorney-client privilege does not apply to it.

[20] As for the other four Group I Documents, they were all prepared by Schindler attorneys for Schindler and subsequently shared with Zurich. "[T]he general rule [is] that the attorney-client privilege is waived when privileged information is disclosed to a third party." *Groth v. Pence*, 67 N.E.3d 1104, 1119 (Ind. Ct. App. 2017) (citation omitted and formatting altered), *trans. denied*. Indiana, however, has adopted the common-interest privilege, which is "an extension of the attorney-client privilege" that "permits parties whose legal interests coincide to share privileged materials with one another in order to more effectively

prosecute or defend their claims." *Id.* (citations omitted and formatting altered).

[21] We have little difficulty in concluding that the legal interests of Zurich and Schindler coincide sufficiently in this case to trigger the common-interest privilege. Both defendants have an obvious interest in not indemnifying the Simon Plaintiffs to the tune of $2,000,000 if they can avoid it. While Zurich's and Schindler's interests may not always coincide in the future (if, for instance, Zurich seeks indemnification from Schindler pursuant to their fronting agreement for a payment made to the Simon Plaintiffs), they are sufficiently aligned for the time being. We conclude that the Group I Documents, save ZURPRI 218, are protected by the common-interest extension to the attorney-client privilege.

## D. Insurer-Insured Privilege

[22] The last question we must answer is whether ZURPRI 218 is protected by the insurer-insured privilege, first adopted by the Indiana Supreme Court in the case of *Richey v. Chappell*, 594 N.E.2d 443 (Ind. 1992). In that case, the Court held that "where the policy of insurance requires the insurer to defend claims against the insured, statements from the insured to the insurer concerning an occurrence which may be made the basis of a claim by a third party are protected from disclosure." *Id.* at 447. In this case, however, the Simon Plaintiffs are not third-party claimants but, rather, additional insureds of Zurich who are pressing a first-party claim of bad-faith denial of defense and indemnity. Because the Simon Plaintiffs are not third-party claimants, the

insurer-insured privilege as defined by the *Richey* Court does not apply to ZURPRI 218, even though it was prepared by Zurich (the insurer) for Schindler (an insured). As mentioned, because privileges are to be construed narrowly, *Boulangger*, 89 N.E.3d at 1116, we will not endeavor to expand the scope of the *Richey* holding to cover the facts of this case. Zurich has failed to establish an abuse of discretion as to ZURPRI 218.

## E. Summary of Issue I

[23] We decline the invitation, to the extent that such an invitation was extended, to apply the various evidentiary privileges and doctrine differently in a case where a bad-faith-denial-of-coverage claim has been made. We conclude that the four Group II Documents are not discoverable pursuant to the work-product doctrine. We further conclude that four of the five Group I Documents are not discoverable, as they are protected by the common-interest extension of the attorney-client privilege. Finally, we conclude that the trial court correctly concluded that ZURPRI 218 is discoverable, as neither the attorney-client nor insurer-insured privileges cover it.

# II. Whether the Trial Court Abused its Discretion by Ordering Sanctions

[24] The trial court ordered an award of attorney fees and the entry of default against Zurich for what it concluded was the improper refusal to produce the nine Documents. We have concluded, however, that only one of the Documents is, in fact, discoverable. We are not at all confident that the trial

court would have imposed the same harsh sanctions on Zurich based on the improper withholding of one document as it did on what it concluded was the improper withholding of nine. Consequently, we vacate the trial court's imposition of sanctions without addressing the question of whether such sanctions would have been appropriate had Zurich improperly withheld all nine Documents.

## III. Appellate Attorney Fees

[25] The Simon Plaintiffs request that we remand with instructions to award them the attorney fees incurred in defending this appeal. The Simon Plaintiffs note that there is some authority for the proposition that a party may be awarded appellate fees incurred in defending a sanction imposed for failure to comply with a motion to compel. *See, e.g.*, *Georgetown Steel Corp. v. Chaffee*, 519 N.E.2d 574, 577 (Ind. Ct. App. 1988) ("[I]f appellate expenses were not awardable, then the original award would be offset and its benefit negated."), *trans. denied*. Because Zurich and Schindler have largely prevailed in this appeal, we decline the invitation to order the award of attorney fees to the Simon Plaintiffs.

## Conclusion

[26] We conclude that the four Group II Documents are non-discoverable as work product and that four of the five Group I Documents are protected by the attorney-client privilege. In the end, the only one of the nine Documents that is discoverable is ZURPRI 218. Because we are not confident that the trial court would have imposed the same sanction for improperly withholding one

document as it did for nine, we vacate the trial court's award of attorney fees and entry of default judgment in favor of the Simon Plaintiffs. We remand for further proceedings consistent with this opinion.

[27] The judgment of the trial court is affirmed in part, reversed in part, and remanded for further proceedings.

Robb, J., and Altice, J., concur.