

I N   T H E

# Court of Appeals of Indiana

Steven R. Peabody, et al.,

*Appellants-Plaintiffs*

v.

State of Indiana Office of the Secretary of State
Securities Division,

*Appellee-Defendant*



FILED

Oct 03 2025, 8:53 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

---

October 3, 2025

Court of Appeals Case No.
25A-MI-135

Appeal from the Marion Superior Court

The Honorable Timothy Wayne Oakes, Judge

Trial Court Cause No.
49D02-2408-MI-36935

---

**Opinion by Judge DeBoer**
Chief Judge Altice and Judge Pyle concur.

**DeBoer, Judge.**

## Case Summary

As part of its investigation into alleged violations of the Indiana Uniform Securities Act by VoCare, Inc. (VoCare) and some of its employees, the Indiana Secretary of State Securities Division (the Division) subpoenaed, among other records, those employees' personal bank records from PNC Bank. The employees filed a motion to quash the subpoena duces tecum and a motion for a protective order pursuant to Trial Rule 26(C). The trial court denied the motion to quash but granted the motion for protective order. The employees appeal, asserting the trial court's denial of the motion to quash was in error. We reframe their first argument as contending the subpoena is not reasonable under the Fourth Amendment. They also argue that the subpoena violates their Fifth Amendment rights not to incriminate themselves. Finding the employees have no privacy interest to assert under the Fourth Amendment and that their Fifth Amendment rights are not implicated by the subpoena, we affirm.

## Facts and Procedural History

In 2009, Steven Peabody founded VoCare, a medical technology company in Zionsville, which engages in securities trading. Mary Zappia is the company's attorney; John Coccimiglio is the Chief Financial Officer; and Scot Kane is the former Chief Executive Officer (collectively, the Employees). The Division

opened an investigation[1] into the company and the Employees based on allegations that they had violated the Indiana Uniform Securities Act (the Act).[2] In February 2024, the Division issued a cease-and-desist order against VoCare and the Employees.

[3] In July 2024, the Indiana Securities Commissioner (the Commissioner) issued a subpoena duces tecum ordering PNC Bank to produce certain documents pertaining to "any and all bank accounts, loans, or credit accounts" regarding VoCare and the Employees. Appellant's Appendix Vol. 2 at 20. The request was limited to the time period relevant to each employee's involvement with VoCare.

[4] PNC was given until August 16, 2024 to respond, but the Employees filed a motion to quash the subpoena duces tecum and a motion for a protective order. *See id.* at 12. The Employees opposed the subpoena on grounds that it "constitute[d] a fishing expedition[,]" and that the Division could retrieve the information it sought from VoCare's records alone. *Id.* at 14, 15. They further requested the court enter a protective order pursuant to Indiana Trial Rule

---

[1] The Division asserts the investigation has not yet been deemed either civil or criminal in nature. Transcript at 5.

[2] *See* Ind. Code § 23-19-1-0.2, *et. seq.*

26(C)[3] "to prevent the [] Division from seeking additional confidential information about [the Employees]." *Id.* at 16.

[5] At the December 2024 hearing on the Employees' motion, the Division explained that the subpoena was issued pursuant to the Commissioner's statutory authorization to investigate potential "fraud and securities violations." Transcript at 5. It asserted that its investigation had produced evidence of VoCare employees "directing investors to supply them [] checks, personally to their accounts." Tr. at 8. The Employees argued the subpoena was not sufficiently "[l]imited, relevant, and specific" and claimed that any wrongdoing would be found in VoCare's records alone, making it unnecessary for the Division to delve into records related to Employees' personal accounts. *Id.* at 11-12. They also claimed they were "randomly chosen," as the information of other employees with more authority over the company's financials were not included in the subpoena. *Id.* at 19. Finally, the Employees noted that the time frame in the subpoena did not accurately mirror the time Zappia worked for VoCare.

[6] The trial court amended the time frame of the subpoena applicable to Zappia's records so that it accurately reflected the years of her involvement with the company, but it ultimately denied the motion to quash. *See* Appellant's App.

---

[3] "Upon motion by any party or by the person from whom discovery is sought, and for good cause shown, the court . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Ind. Trial Rule 26(C).

Vol. 2 at 7. The court then granted the motion for a protective order and ordered that the documents remain confidential. Its order limited access "to investigators at the [] Division, the [] Division's attorneys, and counsel from the Attorney General's Office." *Id.* at 8. The Employees appeal.

## Discussion and Decision

[7] The Employees argue the trial court erred in denying their motion to quash the subpoena duces tecum. However, as a threshold matter, we must first address an error in the Employees' arguments below and on appeal.

[8] The Employees mistakenly conflate subpoenas issued in the course of civil discovery with administrative subpoenas issued in the course of an investigation. In their brief, they frame the issue on appeal as follows: "The . . . Act does not diminish the protections afforded to individuals under Indiana Trial Rule 26(C) regarding unreasonable, oppressive, and burdensome subpoenas." Appellant's Brief at 4. They go on to cite myriad case law governing the scope of discovery under Rule 26. *See Boulangger v. Ohio Valley Eye Inst., P.C.*, 89 N.E.3d 1112, 1116 (Ind. Ct. App. 2017); *Richey v. Chappell*, 594 N.E.2d 443, 445 (Ind. 1992); *In re Contempt of Crenshaw*, 708 N.E.2d 859, 861 (Ind. 1999), *cert. denied*; *Himsel v. Indiana Pork Producers Ass'n*, 95 N.E.3d 101, 109 (Ind. Ct. App. 2018); *In re WTHR-TV*, 693 N.E.2d 1, 6 (Ind. 1998); *WTHR-TV v. Milam*, 690 N.E.2d 1174, 1176 (Ind. 1998). However, Trial Rule 26 governs discovery in civil suits. Ind. Trial Rule 26; *see* T.R. 1 ("these rules govern the procedure and practice in all courts of the state of Indiana in all *suits*

*of a civil nature*") (emphasis added). The Employees' reliance on Trial Rule 26 and authorities involving civil discovery is in error because the Division's subpoena duces tecum in this case is not a tool of discovery governed by the Indiana Trial Rules—considering no suit has been brought—but rather an investigative subpoena issued under the Commissioner's statutory authority. *See* Ind. Code § 23-19-6-2 (empowering the Commissioner to require the production of records that they "consider[] relevant or material to [an] investigation").[4] Thus, whether the Act "diminish[es] the protections afforded to individuals under Trial [R]ule 26(C) regarding unreasonable, oppressive, and burdensome subpoenas" is not applicable in this appeal. Appellant's Br. at 4.

[9] Though much of their argument relies on cases applying Trial Rule 26, the Employees do correctly cite and quote *Oman v. State*, a case in which our Supreme Court addressed the propriety of an investigative subpoena. 737 N.E.2d 1131 (Ind. 2000), *reh'g denied*, *cert. denied*. Investigative subpoenas issued by administrative agencies are analyzed under a reasonableness standard derivative of the Fourth Amendment of the United States (U.S.) Constitution.

---

[4] The Employees neither present evidence nor cite any authority suggesting that the Commissioner was not statutorily authorized to issue the subpoena at issue. The Indiana legislature has permitted the Commissioner to:

> (1) conduct public or private investigations within or outside this state which the commissioner considers necessary or appropriate to determine whether a person has violated, is violating, or is about to violate [the Act] . . . .

> (b) For the purpose of an investigation under th[e Act], the commissioner or the commissioner's designated officer may . . . subpoena witnesses . . . and require the production of any records that the commissioner considers relevant or material to the investigation.

I.C. § 23-19-6-2(a)(1), (b).

*See Oklahoma Press Pub. Co. v. Walling*, 327 U.S. 186, 194-95 (1946); *United States v. Morton Salt Co.*, 338 U.S. 632, 651-653 (1950); *See v. City of Seattle*, 387 U.S. 541, 544 (1967); *United States v. Miller*, 425 U.S. 435, 440-442 (1976); *Donovan v. Lone Steer, Inc.*, 464 U.S. 408, 415 (1984); *Oman*, 737 N.E.2d at 1147. Given that the case before us requires review of an administrative agency's investigative subpoena and not a subpoena issued in a civil action, we look to legal authorities governing investigative subpoenas and construe the Employees' arguments as challenging the subpoena under the Fourth Amendment reasonableness standard.

## 1. Standard of Review

[10] Indiana legal authority regarding administrative agency investigative subpoenas is sparse, and most of the federal authority dates back decades. Nonetheless, the case law is consistent in that investigative subpoenas must be "reasonable." *Oman*, 737 N.E.2d at 1147; *State v. Eichhorst*, 879 N.E.2d 1144, 1151 (Ind. Ct. App. 2008), *reh'g denied*, *trans. denied*. A "*pre-charge* investigative subpoena[] issued by [an] administrative agenc[y]" is reasonable if it is "sufficiently limited in scope, relevant in purpose, and specific in directive.]" *Oman*, 737 N.E.2d at 1140 (quoting *Donovan*, 464 U.S. at 415) (emphasis in original); *see State ex rel. Pollard v. Crim. Ct. of Marion Cnty.*, 329 N.E.2d 573, 586 (Ind. 1975).

[11] We generally review the trial court's denial of a motion to quash a subpoena for an abuse of discretion, "which occurs if the trial court's decision was clearly against the logic and effect of the facts and circumstances or the court misinterpreted the law." *State v. Dickens*, 261 N.E.3d 778, 781 (Ind. Ct. App.

2025) (citing *State v. Katz*, 179 N.E.3d 431, 440-41 (Ind. 2022)), *reh'g denied*; *see Eichhorst*, 879 N.E.2d at 1155. However, a question of a subpoena's constitutionality is a question of law we review de novo. *See Umbrella Fam. Waiver Servs., LLC v. Ind. Fam. & Soc. Servs. Admin.*, 7 N.E.3d 272, 275 (Ind. Ct. App. 2014) ("Our standard of review for constitutional questions is de novo.").[5]

## 2. Fourth Amendment

[12]    Generally, "[a] party [] lacks standing to challenge the validity of a subpoena issued to [a third party]." *Oman*, 737 N.E.2d at 1135. Although the Division, relying on *Oman*, does not challenge the Employees' standing, we nonetheless find it necessary to address standing for purposes of our Fourth Amendment analysis. This is because to benefit from Fourth Amendment protections, the party asserting the right to privacy must show that they have a "constitutionally protected reasonable expectation of privacy" in the object sought or searched.

---

[5] The Employees attempt to frame the issue on appeal as one of statutory interpretation, specifically "whether the Indiana Uniform Securities Act allows *unlimited* discovery into private bank records of individuals because they are officers or shareholders of a company." Appellant's Br. at 4. (emphasis added). Accordingly, they assert the trial court's denial of its motion to quash should be reviewed de novo rather than for abuse of discretion. *Id.* at 8.

However, the Employees present no cogent argument that the subpoena at issue exceeded the scope of the Division's investigative authority under the Act beyond stating that its "investigative authority is not all encompassing." Instead, they argue that the subpoena was overbroad under Trial Rule 26(C), asserting the "Act does not diminish the protections afforded to individuals under . . . Rule 26(C)." Given the inapplicability of Trial Rule 26 and the lack of any developed argument regarding the Commissioner's authority under the Act, we find no merit in Employees' asserted reason for reviewing the denial of their motion to quash de novo. Ind. Appellate Rule 46(A)(8)(a) ("The argument must contain the contentions of the appellant on the issues presented, supported by cogent reasoning."). Instead, as discussed above, we review the trial court's decision on the motion to quash for an abuse of discretion while reviewing constitutional issues de novo.

*Oliver v. United States*, 466 U.S. 170, 177 (1984) (quoting *Katz v. United States*, 389 U.S. 347, 360 (1967) (Harlan, J., concurring)).

[13]     The year after its decision in *Oman*, our Supreme Court stated that "[u]nder Fourth Amendment law, the standing and search and seizure inquiries 'merge into one: whether government officials violated any legitimate expectation of privacy held by petitioner.'" *Smith v. State*, 744 N.E.2d 437, 439 (Ind. 2001) (quoting *Rawlings v. Kentucky*, 448 U.S. 98, 106 (1980)).  It has further recognized that

> Fourth Amendment rights are personal and may not be vicariously asserted.  *Rakas v. Illinois*, 439 U.S 128, 133-34 . . . (1978). . . . "[I]n order to challenge a search as unconstitutional, a defendant must have a legitimate expectation of privacy in that which is searched."  *Livingston v. State*, 542 N.E.2d 192, 194 (Ind. 1989) . . . . In reviewing whether a privacy expectation exists under a Fourth Amendment analysis, this Court also looks to whether the defendant has control over or ownership in the premises searched.  *Lee v. State*, 545 N.E.2d 1085, 1091 (Ind. 1989); *Livingston*, 542 N.E.2d at 194; *Stout v. State*, 479 N.E.2d 563, 566 (Ind. 1985).  The burden is on the defendant challenging the constitutional validity of a search to demonstrate that he had a legitimate expectation in the premises searched.  *Livingston*, 542 N.E.2d at 194.

*Peterson v. State*, 674 N.E.2d 528, 532 (Ind. 1996), *reh'g denied*, *cert. denied*.

[14]     This distinct form of standing under the Fourth Amendment is not jurisdictional but rather a part of an analysis on the merits.  *Minnesota v. Carter*, 525 U.S. 83, 87-88 (1998) (citing *Rakas*, 439 U.S. at 139-40) ("expressly

reject[ing]" an analysis of "whether respondents had a legitimate expectation of privacy under the rubric of 'standing' doctrine"); *see Presley v. United States*, 895 F.3d 1284, 1290 (11th Cir. 2018) (applying this mixed standing and merits analysis to address civil plaintiff's substantive Fourth Amendment claim that it held a reasonable expectation of privacy in financial records held by a bank), *cert. denied*. Thus, the Employees' standing to challenge the subpoena—*i.e.*, whether the Employees have a reasonable expectation of privacy in PNC's records—must be analyzed under the merits of their Fourth Amendment claim.

[15] The Employees assert the trial court erred in denying the motion to quash on the basis that the subpoena was not "sufficiently limited in scope, relevant in purpose, and specific in directive." Appellant's Br. at 9 (quoting *Oman*, 737 N.E.2d at 1140). However, we need not analyze these factors because the Employees have failed to show they have an expectation of privacy in PNC's records.

[16] In *United States v. Miller*, Miller was indicted for tax evasion and prior to his trial, the Alcohol, Tobacco, and Firearms Bureau subpoenaed documents from two banks at which Miller held accounts. 425 U.S. 435, 436-37 (1976). The banks were ordered to produce "all records of accounts, I.e. [sic], savings, checking, loan or otherwise" held in Miller's or his company's name spanning a period of four months. *Id.* at 437-38. Miller later filed a motion to suppress the documents produced by the banks, arguing the documents were illegally seized because the subpoenas were defective, but the trial court denied the motion. *Id.* at 438-39. The Fifth Circuit Court of Appeals reversed citing, in part, the

prohibition in *Boyd v. United States* against "compulsory production of a man's private papers to establish a criminal charge against him[.]" *Id.* at 439 (quoting *Boyd*, 116 U.S. 616, 622 (1886)).

The U.S. Supreme Court reversed the judgment of the Court of Appeals, holding that it "erred in finding the subpoenaed documents to fall within a protected zone of privacy" and that Miller "possessed no Fourth Amendment interest that could be vindicated by a challenge to the subpoenas." *Id.* at 440, 445. It reasoned that "[a]ll of the documents obtained, including financial statements and deposit slips, contain only information voluntarily conveyed to the banks and exposed to their employees in the ordinary course of business." *Id.* at 442. The Court went on to state that:

> [t]he depositor takes the risk, in revealing his affairs to another, that the information will be conveyed by that person to the Government. This Court has held repeatedly that the Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by him to Government authorities, even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed.

*Id.* at 443 (internal citations omitted). Given its holding, the Court did not address the scope of the subpoenas.

Here, the Employees do not address *Miller*, nor do they direct us to any legal authority superseding its holding. To the contrary, the Supreme Court recently stated in *Carpenter v. United States* that *Miller* remains good law. 585 U.S. 296,

316 (2018) ("We do not disturb the application of . . . *Miller*[.]").  Thus, consistent with *Miller*, we hold that the Employees have no legitimate expectation of privacy in the bank records held by PNC Bank and cannot successfully challenge the subpoena on such grounds.

## 4. Fifth Amendment

[19] The Employees further argue the subpoena should be quashed because it compels them to turn over incriminating information about themselves in violation of the Fifth Amendment.  *See* Appellant's Br. at 11.  This is a misapplication of the Fifth Amendment right against self-incrimination.

[20] The Fifth Amendment to the U.S. Constitution states, in part: "No person . . . shall be compelled in any criminal case to be a witness against himself[.]"  The U.S. Supreme Court made it clear in *Fisher v. United States* that this personal right prohibits the government from compelling an individual to produce evidence against himself; however, this right does not prevent evidence against oneself being produced by third-parties.  425 U.S. 391, 399 (1976) (citing *Johnson v. United States*, 228 U.S. 457, 458 (1913)).  The U.S. Supreme Court has repeatedly held "that the Fifth Amendment is limited to prohibiting the use of 'physical or moral compulsion' *exerted on the person asserting the privilege*[.]"  *Id.*

at 397 (quoting *Perlman v. United States*, 247 U.S. 7, 15 (1918)) (emphasis added).[6]

[21]  The Fifth Amendment protects the Employees from being compelled to turn over incriminating information against themselves, which is not occurring here. The Employees are not the recipients of the subpoena; PNC is. And the Employees are not compelled to turn over information about themselves; PNC is required to turn over information about the Employees. So, the Employees' Fifth Amendment rights cannot be asserted in relation to PNC's compliance with the subpoena. PNC is a non-party in possession of the relevant information, similar to the nonparties subpoenaed in *Fisher* and *Boulangger*. *Id.* at 397 ("The taxpayer's privilege under [the Fifth] Amendment is not violated . . . because enforcement against a taxpayer's lawyer would not 'compel' the taxpayer to do anything and certainly would not compel him to be a 'witness' against himself."); *Boulangger*, 89 N.E.3d at 1118 (concluding that Boulanggers' Fifth Amendment right against self-incrimination "did not protect the fee payment information that [Respondent] subpoenaed and requested from [the law firm]"). Because the information is sought from someone other than the

---

[6] The U.S. Supreme Court further stated in *Fisher* that

> [i]nsofar as private information not obtained through compelled self-incriminating testimony is legally protected, its *protection stems from other sources[]*[;] the [sic] Fourth Amendment's protection against seizures without warrant or probable cause and against subpoenas which suffer from "too much indefiniteness or breadth in the things required to be 'particularly described,'" *Oklahoma Press Pub. Co. v. Walling*, 327 U.S. 186, 208, . . . (1946); *In re Horowitz*, 482 F.2d 72, 75-80 (CA2 1973) (Friendly, J.)[.]

425 U.S. at 401 (emphasis added).

Employees, the Employees cannot successfully assert their personal Fifth Amendment rights to prevent its disclosure.

## Conclusion

[22] Because the Employees' challenges under both the Fourth and Fifth Amendments fail, we conclude the trial court's denial of the motion to quash was not an abuse of discretion. Therefore, we affirm.

[23] Affirmed.

Altice, C.J., and Pyle, J., concur.

ATTORNEYS FOR APPELLANTS

Anthony L. Holton
Reminger Co., L.P.A.
Indianapolis, Indiana

Joseph S. Simms
Reminger Co., L.P.A.
Cleveland, Ohio

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General
Indianapolis, Indiana

Benjamin M.L. Jones
Section Chief, Civil Appeals
Indianapolis, Indiana

Robert Yoke
Deputy Attorney General
Indianapolis, Indiana